THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN W. YOUNG III, Defendant-Appellant.

Third District    No. 80-617

Opinion filed June 17, 1981.

William G. Schick, of Rock Island, for appellant.

James T. Teros, State's Attorney, of Rock Island (John X. Breslin and Kenneth A. Wilhelm, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STOUDER delivered the opinion of the court:

The defendant, John W. Young III, appeals from his conviction for theft by deception following a jury trial in the Circuit Court of Rock Island County. The court sentenced the defendant to an extended term of 8 years' imprisonment. He presents nine issues for review.

The defendant was arrested on Friday, May 23, 1980, signed a waiver of his *Miranda* rights later that night, and four days later, confessed to purchasing three items of jewelry and a car for $6,650. He paid for the items by a redemption check drawn from his account in the Dreyfus Fund II, a money market fund, and issued by the fund's agent, the Bank of New York. The defendant admitted to opening the money market fund using a check drawn on his account with the Bermuda National Bank, Ltd., Hamilton; Bermuda, which contained no funds. Consequently, the defendant knew his Dreyfus account contained no funds and knew the check would not be paid when presented. Following a continuance requested by the State on August 29, 1980, the cause came to trial on September 23, 1980, 122 days after the defendant's arrest.

The defendant first contends the court erred in granting the State's motion for continuance and thus denied him his rights under the speedy trial provisions of the Code of Criminal Procedure. (Ill. Rev. Stat. 1979, ch. 38, par. 103—5.) That section requires that an accused must be tried within 120 days from the date he was taken into custody. The State, however, may move for an extension not to exceed 60 days beyond the 120-day period by showing that it has exercised without success due diligence to obtain evidence material to the case and that reasonable grounds exist to believe that such evidence may be obtained later. (Ill.

Rev. Stat. 1979, ch. 38, par. 103—5(c).) This continuance should not be confused with section 114—4, which authorizes continuances but which does not extend the 120 days. (Ill. Rev. Stat. 1979, ch. 38, par. 114—4; *People v. Toolate* (1978), 62 Ill. App. 3d 895, 379 N.E.2d 927.) In the case at bar, the State after nearly 100 days moved to continue the trial date, stating that a material witness, Trevor Allwood, a bank employee from the Bermuda National Bank, would be in England and consequently would be unavailable to testify at the trial then set for September 8, 1980. Pursuant to sections 103—5 and 114—4, the State moved to continue the date of the trial until after September 19, 1980, when Allwood would be available. The defendant argues the motion was insufficient in two respects: (1) that the motion was based on section 114—4, not on section 103—5(c); and (2) that the unverified allegations failed to demonstrate due diligence. We disagree. The State's motion did incorrectly refer to section 114—4, but upon an examination of the record, we find the State fully apprised the court that the requested continuance would toll the 120-day speedy trial period. The motion also referred to section 103—5, and the State informed the court that Allwood's return to Bermuda would come just 1 day prior to the expiration of the 120-day period. Moreover, the State presented its justification for the continuance in terms of due diligence, the operative test for a section 103—5(c) continuance. (See *People v. Folenga* (1980), 83 Ill. App. 3d 210, 404 N.E.2d 935.) Such was not the case in *People v. Toolate* (1978), 62 Ill. App. 3d 895, 379 N.E.2d 927, where the court continued the trial date upon a motion that referred to no specific section and failed to otherwise apprise the court that the continuance would extend the 120-day period. Although the State incorrectly referred to section 114—4, we find the remainder of the motion was placed "not only in the right church but also in the proper pew." *People v. Toolate* (1978), 62 Ill. App. 3d 895, 898, 379 N.E.2d 927, 929.

■■ As for the defendant's contention concerning the adequacy of the State's claim of due diligence, we find the State's allegations met the section 103—5(c) requirement of due diligence. The allegations need not be presented by affidavit as the defendant urges (see *People v. Gamble* (1976), 41 Ill. App. 3d 394, 353 N.E.2d 136), and may be made orally. As for the merits of the State's claim of due diligence, this court recently held in *People v. Folenga* (1980), 83 Ill. App. 3d 210, 404 N.E.2d 935, that the temporary absence of a material witness from the country constituted a valid ground for a section 103—5(c) continuance.

The defendant next argues that the circuit court erred in denying his motion to exclude the admission of evidence resulting from discovery disclosed by the State after the deadline set by the court. On July 31, 1980, the court ordered the State to disclose to the defendant discovery in its

possession within 7 days. That same day, the State filed its disclosure listing several witnesses. The State also furnished 42 pages of police reports. On September 8, 10 and 15, however, additional disclosures were made. The three subsequent disclosures included the names of additional witnesses and records of several checking accounts opened by the defendant since 1978.

■■ The disclosure provisions of Supreme Court Rule 412 (Ill. Rev. Stat. 1979, ch. 110A, par. 412), were enacted to prevent surprise, unfairness, and inadequate preparation. (*People v. Rand* (1975), 29 Ill. App. 3d 873, 331 N.E.2d 15.) Compliance is excused only if the State was unaware prior to trial of the existence of evidence subject to discovery and could not have become aware of it in the exercise of due diligence. *People v. Boucher* (1978), 62 Ill. App. 3d 436, 379 N.E.2d 339.

Upon examination of the record, we find that the complexity of the instant case precluded a definitive knowledge by the State of the extent of the evidence at the time the disclosure order was made. At that time, the State knew the defendant wrote several redemption checks from his Dreyfus account which he had opened using a Bermuda National check which he knew would not be paid. The State subsequently learned the defendant also attempted to increase his Dreyfus account by remitting checks totaling several hundred thousand dollars that were drawn on his account with the Continental Bank of Canada, Toronto, Canada. That account also contained no funds. The State then discovered the defendant had opened the Bermuda National account by depositing a $30,000 redemption check from his account with the Kemper money market fund located in Kansas City, Missouri. The Kemper fund check was returned unpaid because the defendant's account contained no funds. Upon further discovery, the State learned that Kemper's agent, the United Missouri Bank, had closed the account because the defendant deposited into the fund checks drawn from his account with the American National Bank and Trust Company of Chicago which that bank had returned unpaid. The American National Bank refused to pay the checks because the defendant's account contained no funds.

■■ The extent of this check writing, spanning nearly 2 years and involving several banks, was not and could not have been known at the inception. Likewise, the State could not disclose the names of its witnesses initially because it was unaware then of the defendant's extensive check writing and because the various banks failed to promptly decide which employees would testify. As soon as the State received additional evidence it promptly disclosed it to the defense, all before the trial took place. Although the court offered defense counsel additional time for preparation in light of the additional disclosures, he admitted he had

examined the evidence and refused any additional time. In the instant case, the circuit court properly admitted evidence disclosed after the discovery deadline.

The defendant next claims the Rock Island police denied his access to an attorney, and thus the court erred in denying his motion to suppress his confession. As the defendant went through booking at the Rock Island police headquarters, he walked up to Detective David Lund, handed Lund two rings, and started to talk about the instant offense. Lund stopped the defendant from continuing and read him his *Miranda* rights. The defendant said he understood the rights and signed a waiver of those rights on a form provided by Lund. The defendant returned to complete the booking and placed a telephone call to William Bailey, an attorney. After reaffirming his waiver of his *Miranda* rights, the defendant made a statement concerning his purchase of several items from Virgil Helton. He admitted paying Helton with a redemption check drawn from his Dreyfus account. He further admitted he opened the Dreyfus account with a check drawn on a Bermuda bank in which he had no funds. He also said Bailey played a part in the offense. When Bailey appeared, Lund told Bailey the defendant hinted that Bailey was involved in the incident. Lund informed Bailey that the defendant wished to talk with him and asked if he represented the defendant. (The policy of the Rock Island Police Department is that visitation is limited to family, clergy, and attorneys representing defendants.) Bailey replied he did not represent the defendant in any criminal charge. When Lund informed Bailey that he could not see the defendant unless Bailey represented him, Bailey said he did not wish to see the defendant and left the station.

The record indicates that from the moment the defendant entered the police station, he wished to talk. Lund properly advised him of his *Miranda* rights which the defendant properly waived. The defendant argues the Rock Island police policy of limiting visits to attorneys actually representing the accused infringes his sixth and fourteenth amendment rights to counsel by denying the opportunity of counsel to initially interview a prospective client. The instant case does not present such a situation. Although the defendant called Bailey, the attorney specifically declared he did not represent the defendant, saying he did not even want to see him. Accordingly, the circuit court's decision to deny the defendant's motion to suppress the defendant's statements was not manifestly erroneous.

The defendant next contends the court committed prejudicial error by admitting business records as substantive evidence because the State failed to lay a proper foundation as required in section 115—5 of the Code of Criminal Procedure. (Ill. Rev. Stat. 1979, ch. 38, par. 115—5.) The documents in issue were of two kinds: (1) correspondence from several

payee banks to the defendant informing him that his checks were returned unpaid and from several drawee banks informing the defendant that his accounts with those banks were closed; and (2) several checks written by the defendant on his accounts with the Continental Bank of Canada and the Kemper money market fund which went unpaid when presented because the defendant's accounts with the drawee banks had no funds. We disagree with the defendant's contention and hold the court properly admitted the evidence in question as exceptions to the hearsay rule. The State adduced sufficient evidence to establish clearly that the letters were made in the regular course of business, thus laying a proper foundation for their admission. Although the defendant's checks were not business records, they constituted an admission against interest and thus were admissible to prove the truth of the matter asserted therein. Finally, the stamps of the presenting banks found on the back of the defendant's checks which indicated the checks were returned because the defendant's account contained no funds were also shown to have been made in the regular course of business and thus were admissible as business records.

■■ The defendant also contends that when the circuit court found those documents to be "quite clearly admissible," the remark demeaned defense counsel's objections generally and thus prejudiced the defendant. Our supreme court has recently rejected the same argument in a similar situation in *People v. Owens* (1976), 65 Ill. 2d 83, 357 N.E.2d 465. While the circuit court's comment was unnecessary, that remark alone did not imply disparagement of counsel or substantially prejudice the defendant. Compare *People v. Owens* (1976), 65 Ill. 2d 83, 357 N.E.2d 465, with *People v. Tyner* (1964), 30 Ill. 2d 101, 195 N.E.2d 675; *People v. Santucci* (1962), 24 Ill. 2d 93, 180 N.E.2d 491.

The defendant next contends that copies of his new account forms for three checking accounts with the Continental Bank of Canada and copies of the records of his checking account with the American National Bank and Trust Company of Chicago were irrelevant, and thus the circuit court erred in admitting that evidence. We disagree. Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. (*People v. Wurster* (1980), 83 Ill. App. 3d 399, 403 N.E.2d 1306.) The new account forms established that the defendant did in fact open three checking accounts which were then used in an attempt to increase his Dreyfus account. The records of the defendant's checking account with American National Bank indicated that when he wrote a $25,000 check to open his Kemper account, the bank refused to pay it because his account had no funds. The records also showed that the bank notified him of that fact and charged his account for the bank's handling of the checks returned unpaid. Thus,

the records tended to establish the beginning of a trail of bad checks from which the jury could infer that the defendant knew his $6,650 Dreyfus redemption check would be returned unpaid.

■■ The defendant also argues that a comment made by the State during its closing argument concerning the expenses which the State incurred in presenting the instant case prejudiced the defendant. The comment in issue was made by the assistant state's attorney in the course of a lengthy closing argument. The defendant objected, and the court sustained the objection and admonished the jury. In light of the overwhelming evidence of the defendant's guilt, we believe the comment was not a material factor in his conviction and the verdict would not have been different had the comment not been made. Accordingly, the comment was not prejudicial error.

The defendant next argues the State failed to prove him guilty beyond a reasonable doubt of theft by deception. A court of review will not disturb a jury's verdict unless that verdict is so palpably contrary to the manifest weight of the evidence as to raise reasonable doubt of the defendant's guilt. In the instant case, the verdict that the defendant issued a check to Virgil Helton in exchange for property knowing the check would not be paid by the drawee bank was well supported by competent evidence. After properly waiving his *Miranda* rights, the defendant admitted he had no funds in his Dreyfus account to pay the check made to Helton. The State further adduced uncontroverted evidence demonstrating how the defendant opened a series of checking accounts, including one with the Dreyfus Fund and its agent, the Bank of New York, without depositing any funds in a single account. The testimony and bank records concerning the large number of checks written and their extremely large amounts drawn against accounts having no funds could leave no inference but that the defendant knew the Bank of New York would not pay the check when presented.

■■ Finally, the defendant asserts his extended-term sentence of 8 years' imprisonment was excessive because the circuit court improperly considered two prior theft convictions which were obtained without counsel and without a sufficient showing of waiver of counsel and because the court improperly considered portions of the presentence report which were stricken at the sentencing hearing.

In imposing the 8-year sentence for the defendant's Class 3 felony of theft by deception (Ill. Rev. Stat. 1979, ch. 38, par. 16—1(e)(3)), the court noted his three recent past convictions. Two convictions were concurrently imposed in the Circuit Court of Cook County pursuant to a negotiated plea without the benefit of counsel. The defendant was also convicted of felony theft in the Circuit Court of Rock Island County after being adequately represented by counsel. At the time of the instant

offense the defendant was serving mandatory supervision for the two prior Cook County theft convictions. Although a sentencing court cannot consider convictions obtained without the benefit of counsel to enhance sentencing penalties, the court properly considered the Rock Island felony theft conviction, where the defendant was adequately represented by counsel, to extend the maximum sentence applicable for a Class 3 felony from 5 years to 10 years. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2(b)(1).) In light of the court's conclusion that the instant case was not "a simple bad check" case and that the defendant exhibited little sign of rehabilitation, the defendant's 8-year sentence was not so patently unreasonable and arbitrary to constitute an abuse of discretion. Finally, the court specifically stated it disregarded the portions of the presentence report that were stricken. Unless the record shows evidence to the contrary, the court is presumed to consider only relevant material.

For the foregoing reasons, we affirm the defendant's conviction and sentence for theft by deception entered in the Circuit Court of Rock Island County.

Affirmed.

SCOTT, P. J., and ALLOY, J., concur.