THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ALBERTA PEEBLES, Defendant-Appellant.

First District (4th Division)    No. 81—2981

Opinion filed December 15, 1983.

JOHNSON, J., dissenting.

James J. Doherty, Public Defender, of Chicago (Kathleen M. McGinnis, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Harry H. Semrow, Jr., Assistant State's Attorney, of counsel), for the People.

JUSTICE JIGANTI delivered the opinion of the court:

Defendant, Alberta Peebles, was indicted along with her husband, Eugene Peebles, on 111 counts of theft and one count of conspiracy to commit theft. The two codefendants' cases were severed and after a jury trial, Alberta was convicted of conspiracy and acquitted of theft. She was sentenced to two years. On appeal from her conviction of conspiracy to commit theft, the defendant contends that her conviction was invalid on two grounds: (1) she was not proven guilty beyond a reasonable doubt and (2) the statute of limitations had run on the conspiracy count. She also contends that she was denied a fair trial because her husband's testimony was stricken and because the State made improper and prejudicial remarks to the jury during closing argument. Finally the defendant contends that she received an excessive sentence.

The State contends that the defendant for a period of 10 years,

starting in June 1967, conspired with her husband to defraud the State of Illinois out of approximately $130,000. The State presented extensive documentation as evidence of the existence of a conspiracy. This evidence revealed that in June 1967, the defendant filed an application for public aid due to the desertion of her husband. She indicated her address as 6425 South Parnell and her husband's as 222 East 60th Street. She informed the State that Eugene had been working at Ward Baking Company and was earning approximately $120 per week. Other documentary evidence refutes the above information given to the Department of Public Aid. These documents indicate that on several occasions during 1967-1968, Ward reascertained Eugene's address, and its personnel records listed his home address as 6425 South Parnell. In addition, Eugene's income for 1967 from Ward was $11,116 and for 1968 was $10,346. These amounts totaled nearly twice the amount the defendant informed the State her husband was earning for those time periods. Further documentation reveals that Eugene opened a bank account at Michigan Avenue National Bank in March 1970, and the home address listed was the same as the defendant's. Eugene was the sole signator.

This pattern of identical addresses for the defendant and Eugene, despite her claim of desertion, can be traced by the documentation for each of the following years of the alleged conspiracy. The defendant informed the State in November 1971, that she had moved to 10535 South Prairie Avenue. In January 1972, the defendant received a public aid warrant for $125. Subsequently, this instrument bore two endorsements, the defendant's and Eugene's, and was stamped with the account identification number of Eugene's savings account at Michigan Avenue National Bank. Moreover, in 1971, a mortgage was executed on the 10535 South Prairie property bearing the names of both Alberta and Eugene Peebles. In 1972, Eugene filed a signature card at a currency exchange and listed his home address as 10535 South Prairie. In October 1973, the defendant filed a signature card at the same currency exchange and also listed her home address as 10535 South Prairie. In 1974, Eugene founded a corporation, and as its incorporator, listed his address as 10535 South Prairie. He also opened a checking account for the corporation and had the statements mailed to the Prairie Avenue address.

In February 1975, the defendant informed the State that she had moved to 12110 South Emerald Avenue. In March 1975, she requested additional assistance listing the same Emerald Avenue address. In July 1975, an official from the State conducted a redetermination visit upon the defendant at 12110 South Emerald Avenue. The defendant

was asked about any changes in her income and the whereabouts of her husband. She continued to represent that Eugene was not living with her and that he was earning $120 per week. Eugene worked at Ward Baking Company until November 1974, at which time he applied for unemployment compensation. The unemployment records list Eugene's address in November 1974 as 10535 South Prairie; he also listed 12110 South Emerald as his address for 1975. Eugene Peebles earned well over $10,000 each year he was employed at Ward.

The defendant's address for 1976 was listed with the Department of Public Aid as 9106 South Harvard. Also in 1976, Eugene's signature card at the currency exchange was amended to reflect the new address at 9106 South Harvard and also to allow the defendant to negotiate checks that named Eugene as payee. Between May and June of 1976, seven unemployment warrants were sent to Eugene at 9106 South Harvard; five of those checks were deposited in a joint savings account Eugene held with the defendant at the Union National Bank. In 1976, an additional corporation was set up by Eugene, Gino's Tax and Information Center. Eugene was listed as the owner, living at 9106 South Harvard. Gino's also had an account at Union National Bank. During 1976, two particular deposits into Gino's account were welfare warrants issued to the defendant. In addition to the defendant's endorsement, these warrants bore second endorsements, providing, "Pay to the order of Union National Bank of Chicago for deposit only Gino's Tax and Information Center."

In April 1977, the defendant applied for food stamps and listed her address as 9106 South Harvard. She also indicated that her "Aid to Dependent Children" was her sole source of income. In August 1977, Ms. Joanne Cobb, a caseworker for the Department, went to 9106 South Harvard for a redetermination visit of the defendant. At trial, Cobb testified that when she arrived, a young boy directed her to the kitchen where she observed a man cooking. Cobb was then informed by the defendant that the man was Eugene and that they had reconciled. The defendant then instructed Cobb to cancel her aid since Eugene was presently employed on a full-time basis.

Robin Kunze, a document examiner for the Illinois Department of Law Enforcement, testified that the endorsements that appeared on public aid warrants issued to the defendant that were deposited in Eugene's account and on unemployment warrants issued to Eugene were positively identifiable as the defendant's signature.

Arthur Turner, a friend of Eugene, testified for the defense stating that he had known Eugene since 1969 and as far as he knew, Eugene had never lived with his family. Bobbie Richards, the defend-

ant's daughter, testified that she had lived at home from 1967 to 1972 and that her father did not live with them during that time period.

Finally, after waiving his rights under the fifth amendment, Eugene testified for the defense. He testified that he moved out of 6425 South Parnell in 1967 and that he moved back with his wife in 1977 for a month or two. He stated that his wife did not sign a mortgage on the 10535 South Prairie property and that he never discussed the bank accounts at Michigan Avenue National Bank and Union National Bank with the defendant. On cross-examination, Eugene refused to answer any more questions on the grounds that to do so would tend to incriminate him, after the State attempted to impeach him regarding prior inconsistent statements about his residence. The trial court then struck all of Eugene's testimony and instructed the jury to disregard it. The jury returned a verdict of guilty on the charge of conspiracy to commit theft.

Pursuant to section 8—2 of the Criminal Code of 1961, the requisite elements of conspiracy are (1) an agreement to commit an offense, (2) with an intent the offense actually be committed, and (3) the commission of an act in furtherance of the agreement by a co-conspirator. (Ill. Rev. Stat. 1977, ch. 38, par. 8—2.) However, because of the clandestine nature of the conspiracy agreement and the foreseeable difficulty of the prosecution's burden of establishing the defendant's conspiratorial intent and agreement by direct proof, the courts have permitted broad inferences to be drawn from the circumstances, acts and conduct of the parties. *People v. Mordick* (1981), 94 Ill. App. 3d 497, 418 N.E.2d 1057.

◼ In the instant matter, the State presented extensive documentation tending to show that the defendant and Eugene were not separated as the defendant had represented to the Department of Public Aid, and that Eugene was earning more than the defendant had suggested. Furthermore, the State's evidence tended to show that the defendant and Eugene were sharing their income, thus making the defendant's receipts of public aid fraudulent. We believe that the cumulative effect of the substantial circumstantial evidence is sufficient to justify a finding of guilty of conspiracy to commit theft. *People v. Weaver* (1982), 92 Ill. 2d 545, 442 N.E.2d 255.

A second issue raised on appeal by the defendant is that her conviction of conspiracy is invalid because the statute of limitations had run on the conspiracy count. In Illinois, the statute of limitations for conspiracy is three years after the commission of the offense. (Ill. Rev. Stat. 1977, ch. 38, par. 3—5(b).) Case law provides that every overt act in furtherance of a conspiratorial agreement is a renewal of

the conspiracy, and the statute of limitations begins to run from the date of the commission of the last overt act. (*People v. Isaacs* (1967), 37 Ill. 2d 205, 226 N.E.2d 38.) Included as an act in furtherance of the conspiracy are subsequent efforts of concealment which are directed at enabling the conspirators to escape punishment. *People v. Meagher* (1979), 70 Ill. App. 3d 597, 388 N.E.2d 801.

■ The indictment in the present action, brought on June 23, 1979, charged the defendant with conspiracy to commit theft "on or about April 2, 1975, July 2, 1975 and August 23, 1977." Without dispute, the first two dates alleging conspiratorial acts are clearly not within the applicable three years statute of limitations. The third date listed in the indictment, August 1977, does come within the three-year period. However, the defendant asserts that the August 1977 act, which was when the defendant told the State caseworker that she and her husband had reconciled and that she no longer needed public aid, was not an act in furtherance of the conspiracy. We disagree. The evidence presented at trial is clearly sufficient for a jury to draw the inference that the defendant and Eugene had consistently lied to the State regarding their living arrangements and their income level. It appears that the Peebles were living together continuously from 1967, despite the defendant's representation to the contrary, so that, the time Cobb made an unannounced redetermination visit on the defendant, it became necessary for the defendant to conceal the long-term fraud she and Eugene had been perpetrating on the State by telling Cobb that Eugene had just moved back home. As previously stated, the law provides that subsequent efforts of concealment are acts in furtherance of the conspiracy, therefore, the defendant's attempt to conceal from the State her 10-year-long fraud was an act in furtherance of the conspiracy. This act in August 1977, was well within the three-year statute of limitations period. Accordingly, the defendant's conviction of conspiracy is not invalid.

■ The defendant next contends that she was denied a fair trial because Eugene's testimony was completely stricken from the record. It is well established that a defendant who takes the stand in his own behalf, is not entitled to claim the privilege against self-incrimination on cross-examination on matters reasonably related to the subject matter of his direct examination. (*Jenkins v. Anderson* (1980), 447 U.S. 231, 65 L. Ed. 2d 86, 100 S. Ct. 2124.) The defendant must testify truthfully and accurately and in order to assure compliance, the prosecution is equipped with, and obligated to use, the traditional truth-testing devices of the adversary process. *Harris v. New York* (1971), 401 U.S. 222, 28 L. Ed. 2d 1, 91 S. Ct. 643.

■ In the instant matter, after voluntarily waiving his fifth amendment rights Eugene testified for the defense. However, during cross-examination, Eugene asserted his right against self-incrimination when asked questions regarding matters in which he testified during direct. While Eugene is not the defendant, the legal principles stated above equally apply to a nonparty witness. Eugene's testimony on direct was not subject to proper cross-examination due to the assertion of his fifth amendment right. This testimony was untested and clearly unreliable; thus, the trial court acted properly by striking Eugene's testimony from the record.

The defendant further asserts that she was unfairly and substantially prejudiced by improper remarks made by the State during closing argument. However, the defendant has waived the issue of any impropriety in the State's remarks by failing to object at trial. *People v. Lucas* (1981), 88 Ill. 2d 245, 430 N.E.2d 1091.

■ Finally, the defendant contends that she received an excessive sentence. The length of sentence to be imposed upon the convicted defendant, is a matter that lies within the sound discretion of the trial court, and absent an abuse of discretion, a sentence will not be disturbed on review. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) A sentence for a conviction of conspiracy to commit theft is not less than one year and not more than three years. (Ill. Rev. Stat. 1977, ch. 38, par. 1005—8—1(b)(5).) The defendant was sentenced to two years. Accordingly, the trial court's decision will not be disturbed.

The trial court's decision to convict the defendant of conspiracy to commit theft is affirmed.

Affirmed.

ROMITI, P.J., concurs.

JUSTICE JOHNSON, dissenting:

I dissent from the position taken by the majority; I would reverse. Because the majority's statement is more conclusory than factual, I present this statement of facts.

In June 1979, defendant, Alberta Peebles, and her husband, Eugene Peebles, were jointly indicted on 111 counts of theft and 1 count of conspiracy to commit theft. The conspiracy count charged as follows:

> "Eugene Peebles and Alberta Peebles committed the offense of conspiracy in that they knowingly with the intent that the

offense of theft of property of the State of Illinois in excess of $150.00, be committed, agreed by and between themselves to the commission of said offense, and did, as an act in furtherance of said agreement, among others, the following: on or about April 2nd, 1975, July 2nd, 1975 and August 23, 1977, Alberta Peebles falsely denied to agents of the Illinois Department of Public Aid that her husband resided with her and supported her and their family, further Eugene Peebles concealed his support of his family and his presence in the home by various deceptions and that Eugene Peebles and Alberta Peebles jointly benefited from the receipt of Illinois warrants, food stamps and medical services on hundreds of occasions from December 29, 1967 through September 20th, 1978, ***."

The cases of the codefendants were severed, and after a jury trial Alberta was acquitted of theft but convicted of conspiracy and sentenced to two years.

On June 22, 1967, Alberta applied for public assistance because her husband had deserted her. On an ADC absent parent form, dated June 16, 1967, Alberta reported that her husband made voluntary contributions of food and paid the rent. In January 1968, the Illinois Department of Public Aid determined that Alberta and her children were in need of "substantial medical treatment."

Between 1968 and 1976, caseworkers filled out redetermination of eligibility forms during or after visits to Alberta's home. On the forms Alberta reported to her caseworkers that Eugene was absent. Alberta applied for food stamps on March 25, 1975, and on April 7, 1977.

Alberta reported to the Department of Public Aid her various addresses as follows:

| Address | Date |
| --- | --- |
| 6425 South Parnell | February 1966 |
| 10535 South Perry | November 1971 |
| 12110 South Emerald | February 26, 1975 |
| 10755 South Eggleston | |
| 9106 South Harvard | 1976 |

Eugene Peebles' addresses were listed on exhibits as follows: the Parnell address was listed on an employment record dated March 27, 1968, and on the signature card for an account opened by Eugene on March 19, 1970, at the Michigan Avenue National Bank; the Perry address was listed on a signature card dated May 19, 1972, for a currency exchange, on Eugene's employment record dated October 23, 1973, and on an account card for an account opened April 3, 1974, at the Michigan Avenue National Bank for a business owned by Eugene;

the Emerald address appeared on statements issued between March 31 and June 30, 1976, for a joint account of the Peebles at the Union National Bank of Chicago and on an application for unemployment compensation for Eugene; the Harvard address appeared on an application for unemployment compensation and on Eugene's unemployment compensation checks dated May-July 1976, on a signature card for an account opened January 13, 1976, at the Union National Bank of Chicago for a business owned by Eugene, as a change of address on the signature card for the currency exchange, and on a joint income tax return dated May 25, 1978.

The State introduced the following documents as evidence of a conspiracy between Alberta and Eugene:

1. Eight public aid checks issued to Alberta Peebles between 1969 and 1972 which were also endorsed by Eugene.

2. A mortgage dated October 12, 1971 between Eugene and Alberta Peebles and Mortgage Associates for $19,400 and signed by the Peebles for property located at 10535 South Prairie.

3. Signature card at a currency exchange. Eugene signed a signature card on May 19, 1972 and Alberta signed a card on October 22, 1973; she was authorized to cash checks for Eugene on June 14, 1976.

4. Alberta endorsed two public aid checks to one of Eugene's business accounts in the Union National Bank on February 18-19, 1976.

5. Statements of account dated March 31-June 30, 1976 for a joint account in Alberta's and Eugene's name which was opened at the Union National Bank of Chicago. Five of Eugene's unemployment checks were deposited in this account in 1976.

6. An unemployment compensation check cashed at the currency exchange was signed by Eugene and Alberta Peebles and addressed to E. Peebles at the Harvard Street residence.

7. A public aid check addressed to Alberta was endorsed by Eugene and Alberta and negotiated at the Michigan Avenue National Bank in an account maintained by Eugene.

JoAnn Cobb, a caseworker for the Illinois Department of Public Aid, testified for the State. Alberta Peebles was one of her clients. Cobb described a visit to Alberta's house on August 11, 1977, as follows:

"I went into the home that morning and one of the children answered the door and I asked for the mother. They told me to

come in. Mrs. Peebles came down the stairs. I was directed to the kitchen area which I believe would have been to my left and at that time I noticed there was a gentlemen there that was in the kitchen area preparing breakfast and Mrs. Peebles let me know that her husband had returned to the home and she was no longer in need of assistance and I should cancel her case."

When asked to elaborate further, Cobb said:

"I came into the home. The gentleman was in the kitchen. At that time I did not know who he was but there was a striking resemblance to him and one of the children and Mrs. Peebles did advise me that she and her husband had reconciled and that he was back into the home fulltime employed. There was no need for supplement and I was to cancel the case."

Robin Lee Kunze was qualified as a handwriting expert and testified that Alberta signed public aid checks issued to her between January 1975 and March 1976, a food stamp application dated March 25, 1975, and an affidavit, two public aid checks which she deposited in a business account of Eugene's on February 18-19, 1976, and an unemployment compensation check issued to Eugene dated July 16, 1976.

Henry Nembhard had been employed by Eugene in the latter's accounting business in 1974 and 1975. He testified that Eugene introduced Alberta to him as his wife and that he saw her on two other occasions in 1974 when she visited Eugene's place of business.

The State rested and Arthur Turner testified for the defense. Turner stated that he has known Eugene Peebles since 1969 but never knew him to live with Alberta.

Bobbie Richards, the Peebles' daughter, testified that she lived with her mother until 1972, and her father did not live with her mother from 1967 to 1972.

In my opinion, this cause should be reversed because no act in furtherance of the conspiracy occurred within the limitations period.

In Illinois, the elements of conspiracy are defined as follows:

"A person commits conspiracy when, with the intent that an offense be committed, he agrees with another to the commission of that offense. No person may be convicted of conspiracy to commit an offense unless an act in furtherance of such agreement is alleged and proved to have been committed by him or by a co-conspirator." (Ill. Rev. Stat. 1975, ch. 38, par. 8—2(a).)

The limitation period for conspiracy is three years. (Ill. Rev. Stat. 1975, ch. 38, par. 3—5(b).) The indictment charged that defendant

committed acts in furtherance of the conspiracy on April 2, 1975, July 2, 1975, and August 23, 1977. Defendant was indicted in June 1979. To come within the three-year period, the State must have alleged and proved an act in furtherance of the conspiracy between June 1976 and June 1979.

According to the majority, defendant committed an act in furtherance of the conspiracy in August 1977 when she told her caseworker that she and her husband had reconciled and that she no longer needed public assistance. The majority found that defendant's statement constituted an act in furtherance because it was an act to conceal the conspiracy by reducing or destroying the potential for detection. In *People v. Meagher* (1979), 70 Ill. App. 3d 597, 603, 388 N.E.2d 801, the court stated:

> "*** [C]onspiracy includes subsequent efforts at concealment, but only if those efforts are proximate in time to the commission of the principal crime. When acts or declarations directed towards concealment are distant from the commission of the offense, they are subject to such grave doubts as to their trustworthiness that they should not be admissible under the co-conspirator exception."

I do not understand, nor does the majority satisfactorily explain, how defendant's statement that she no longer wanted public assistance constituted an act in furtherance of a conspiracy to fraudulently procure public aid. If defendant had said that she wanted to continue receiving assistance, such a statement could be construed as an act in furtherance of the conspiracy. The inference to be drawn from the majority's ruling is that any statement made by defendant could be construed an act in furtherance of the conspiracy. The conclusion renders meaningless the concept of "an act in furtherance of a conspiracy" because the majority's finding makes such an act out of any statement the defendant may have made. In my opinion, defendant's statement that she no longer required public assistance was not an act in furtherance of the conspiracy to commit theft.

Further, the majority suggests that the jury concluded the defendant not only lied in stating that she and her husband had reconciled, but also that it concluded the couple resided together for the entire time defendant received public assistance. Such a suggestion is not warranted. The jury was aware that defendant received public assistance and yet concluded there was no theft. This verdict suggests to me that the jury in fact found that there was no continuous cohabitation. At best, the prosecution's evidence suggests that at times Alberta and Eugene Peebles had the same mailing address. In my opin-

ion, use of a mailing address over a period of years is not proof beyond a reasonable doubt that the addressee resides there. It merely creates an inference that the addressee may reside there.

For the foregoing reasons, I would reverse the decision of the trial court.