THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* EUGENE PEEBLES, Defendant-Appellant.

First District (1st Division)  No. 82—1443

Opinion filed June 4, 1984.—Rehearing denied July 9, 1984.

Frederick F. Cohn, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Jane E. Liechty, and Mary Ann Sullivan, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAMPBELL delivered the opinion of the court:

Following a jury trial, defendant Eugene Peebles was convicted of theft by deception (Ill. Rev. Stat. 1977, ch. 38, par. 16—1(b)) and sentenced to a term of three years and four months to 10 years' imprisonment. The court ordered that the sentence would run consecutively to defendant's prior five-year sentence for an unrelated theft and conspiracy conviction. On appeal defendant raises the following issues: (1) whether the jury was properly instructed as to the meaning of deception; (2) whether the jury was properly advised of the charges against

defendant; (3) whether the trial court erred in not declaring a mistrial on the basis of jury confusion; (4) whether defendant was proven guilty beyond a reasonable doubt; (5) whether the prosecutor's final argument deprived defendant of a fair trial; (6) whether defendant was properly charged; and (7) whether the trial court erred in imposing a consecutive sentence.

The record discloses that defendant, along with his wife, Alberta Peebles, was indicted on 111 counts of theft and one count of conspiracy for acts committed during the period between December 29, 1967, and September 20, 1978. The two codefendants' cases were severed, and Alberta Peebles was convicted of conspiracy. Her conviction was affirmed by this court in *People v. Peebles* (1983), 120 Ill. App. 3d 376, 457 N.E.2d 1318. Defendant was charged with the theft of the following items of property valuing approximately $130,000 and belonging to the Illinois Department of Public Aid: public aid warrants, authorizations for medical services and authorizations for the purchase of food stamps. The State called seven witnesses to testify and presented extensive documentation, generally by way of stipulation, to show that defendant and his wife created a false impression with the State of Illinois that defendant was not residing with his wife and family during the period charged. A department application for public aid filed by Alberta indicated that defendant had "deserted" his wife. Documentary evidence introduced by the department, however, refuted the above information that was provided by Alberta to the department. Such evidence included defendant's signature card which was used to cash welfare checks at a currency exchange and which listed defendant's residence as that of his wife. Additionally, three unemployment checks, made payable to defendant, listed the residence of defendant's wife and one of the checks had been cashed by Alberta. Other documents, too numerous to specify, showed that defendant had endorsed checks made payable to Alberta; that defendant and Alberta together, maintained bank accounts; applied for a lease; filed a mortgage; filed a tax return and held loans. Finally, a department caseworker testified that in August 1977, upon a visit to Alberta's residence, she noticed a man who resembled the children and when asked about him, Alberta stated that she and her husband had reunited and that the case should be terminated. At that time, Alberta had been receiving a full grant.

I

■ Defendant first contends he was denied his right to a fair trial since the jury was not instructed as to the various meanings of

the term "deception" as used in section 16—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 16—1). At the instruction conference, defendant asserted that the jury should be given an instruction as to the specific form of deception that the State had charged in the indictment. The defendant then tendered an oral non-IPI instruction which included the definition of deception that defendant claimed the jury was to consider. The State claimed, however, that the form of deception was not an element of the offense of theft and therefore the jury was not required to be instructed as such. The trial court ruled that the jury would be instructed as to the State's tendered Illinois Pattern Jury Instructions (IPI), Criminal, Nos. 13.01A, 13.04 (2d ed. 1981).

The function of instructions is to convey to the jury the correct principles of law applicable to the evidence so the jury can apply the proper legal principles to the facts and arrive at a proper conclusion based on the law and the evidence. Instructions will be modified only where the facts make the uniform instructions inadequate (*People v. Dordies* (1978), 60 Ill. App. 3d 621, 377 N.E.2d 245), and it is within the sound discretion of the trial court whether to give a non-IPI instruction. *People v. Moore* (1980), 89 Ill. App. 3d 202, 411 N.E.2d 579.

In the instant case, defendant concedes that defendant was charged with the form of deception defined in sections 15—4 (a) and (b) (Ill. Rev. Stat. 1977, ch. 38, pars. 15—4(a), (b)). Those sections define deception as:

"*** knowingly to:

(a) Create or confirm another's impression which is false and which the offender does not believe to be true; or

(b) Fail to correct a false impression which the offender previously has created or confirmed ***."

Deception commonly refers to conduct which has caused another to believe something which is not true. (See Webster's Third New International Dictionary of the English Language 584 (1976).) It appears that the two statutory definitions are sufficiently similar to the common usage of the term so as to allay any fear of jury confusion regarding the type of conduct which would constitute deception in this case. Moreover, it has been held that where a term of common usage is employed in an instruction, there is no need to give an additional instruction defining that term. (*People v. McClellan* (1978), 62 Ill. App. 3d 590, 378 N.E.2d 1221.) Therefore, the trial court did not abuse its discretion in declining to instruct the jury on the various definitions of the term "deception."

## II

■ Defendant also contends his due process rights were violated because the jury was not advised of the specifics of the 112-count indictment against him. Defendant claims the jury should have been advised of all 112 charges brought against him to insure that the jury would consider only whether defendant was guilty of those offenses. (See *Stirone v. United States* (1960), 361 U.S. 212, 4 L. Ed. 2d 252, 80 S. Ct. 270.) The State claims, however, that the jury was fully apprised of all the charges against defendant. We agree.

In the instant case, the record is clear that there were five different substantive charges against defendant which were committed repeatedly by defendant over a 10-year period. The 112-count indictment consisted of the five charges multiplied by the number of commissions of each charge over the period. The counts differed only as to the number, amount and date of issuance of each check and warrant. At the beginning of his opening statement, defense counsel requested permission to read the indictment to the jury. The State objected and a conference was held in which defense counsel stated that he did not want to read each count because "all of the counts are duplicative," but that the "jury has a right to know the guts of what the charges are." The trial court determined that defense counsel could not paraphrase any part of the indictment but instead would be required to read each count in its entirety. Defense counsel responded that he would only read the four basic theft counts, plus the conspiracy count, in their entirety. Before reading the counts, defense counsel told the jury there were other counts but stated, "this is the nature of all of the counts. I mean, if I read all the counts in the indictment we would be here until 6:00 o'clock." Based on this record, we are unpersuaded by defendant's claim that the jury was not fully advised of the charges against him. It is clear that defense counsel was given the opportunity to read the entire indictment to the jury but chose to read only five counts of the indictment, conceding that the balance of the counts were duplicative. Defendant cannot now maintain that the trial court had the duty to make sure the jury had been informed of each count when defense counsel chose to read only the five basic counts to the jury. Moreover, the record shows that the jury was instructed by the trial court as to the elements of the offense for which defendant was convicted. (*People v. Sansone* (1981), 94 Ill. App. 3d 271, 418 N.E.2d 862.) Therefore there was no error in failing to read the entire indictment to the jury under the facts and circumstances of this case.

## III

■ Defendant further contends the trial court erred in denying his motion for mistrial which was requested after the jury reported that it was deadlocked. Defendant claims the jury was coerced into returning a verdict by the trial court's order that the jury would be sequestered for the night and directed to reconsider the issue the following morning. Defendant's claim of coercion is based on the assertion that the trial court knew of the following circumstances at the time of the ruling: that one of the jurors could not be present the following day due to the funeral of a relative; that the jurors felt no decision could be reached by further deliberations; and that a compromise verdict was being considered by the jurors. Defendant also maintains the verdict was inconsistent and thereby proves the jury was forced into returning a compromise verdict. Defendant claims he could not have been convicted of theft by deception and acquitted of conspiracy since his wife had committed the acts of theft "with his complicity."

A motion for mistrial is addressed to the sound discretion of the trial court and in the absence of a showing that defendant has been prejudiced, a reviewing court will not interfere in the exercise of that discretion. *People v. DeBord* (1978), 61 Ill. App. 3d 239, 377 N.E.2d 1308.

■ Here, the record indicates that the jury had deliberated approximately six hours before tendering the note indicating a deadlock. Apparently, in ruling that the jury should be given more time to deliberate, the trial court rejected defense counsel's claim that the jury was being forced into a verdict. The court instead adopted the State's contention that the jury should be given more time to deliberate in view of the numerous documents and sophisticated evidence involved in the case. Such procedure by the trial court has been found to be proper. (*Huwe v. Commonwealth Edison Co.* (1975), 29 Ill. App. 3d 1085, 332 N.E.2d 60.) Further, the record does not support defendant's claim that the trial court had knowledge that a juror would be absent the following day. Defendant's other claim, that the jury returned a compromise verdict, is based on mere speculation. From the evidence presented, it was possible for the jury to have found defendant acted of his own accord in defrauding the State of Illinois and therefore not guilty of conspiracy but guilty of theft by deception. The evidence established that defendant lived at the same address as his wife and family during the time in question although the contrary was reported to the department. Moreover, defendant's failure to correct the department's false information regarding the family's income and

defendant's knowledge that his wife was receiving aid based on that false information also support the jury's verdict. (See *People v. Gunn* (1983), 112 Ill. App. 3d 1011, 446 N.E.2d 281.) Therefore, we find no error in the trial court's decision to deny defendant's motion for mistrial and to direct the jury to continue its deliberation on the following day.

## IV

▮▮ ▮ Defendant also contends that he was not proven guilty of theft by deception beyond a reasonable doubt. In support thereof, defendant argues that no evidence was adduced to show that he acted as a principal to deceive the department of public aid.

A court of review will not disturb a jury's verdict unless that verdict is so palpably contrary to the manifest weight of the evidence as to raise a reasonable doubt of the defendant's guilt. (*People v. Young* (1981), 97 Ill. App. 3d 187, 423 N.E.2d 221.) In the instant case, extensive documentary evidence was introduced to show that defendant failed to correct a false impression with the department that he earned less money than reported and that he was not separated from his wife. The numerous documents which included a mortgage, a check cashing card, a loan application, personnel records, bank accounts, articles of incorporation and an application for unemployment compensation supported the State's contention that defendant knowingly failed to correct false financial information held by the department. The fact that defendant and his wife co-endorsed public aid checks could leave no inference but that defendant knew his wife was receiving public aid based on false information. Under the facts and circumstances in this case, we are convinced that the jury could have found defendant was guilty of theft by deception beyond a reasonable doubt.

## V

▮▮ Defendant also contends he was denied a fair trial due to certain prosecutorial comments made during final argument. Defendant complains in particular of the prosecutor's statement to the jury regarding the evidence that was needed to find defendant guilty. In response to an objection by defense counsel, the court admonished the jury that they were to decide the case based on the instructions that the court would provide. Defendant also complains that the prosecutor improperly diminished the importance of proving guilt beyond a reasonable doubt by arguing: "Every day in this building people are

found guilty beyond a reasonable doubt." Again, in response to an objection, the court directed the jury to "focus their attention on this case." In light of defense counsel's prompt objection followed by the court's admonitions to the jury, as well as an instruction to disregard closing argument statements which were not based on the evidence, we find that any alleged error was cured. *People v. Hampton* (1969), 44 Ill. 2d 41, 253 N.E.2d 385.

## VI

■ Defendant further contends that he cannot be convicted of a felony since no count in the indictment charged him with a theft of over $300 as required by section 16—1(e)(3) of the Criminal Code of 1961. (Ill. Rev. Stat. 1983, ch. 38, par. 16—1(e)(3).) At the time of the commission of the offenses, and on the date of the indictment, theft of property exceeding $150 was a Class 3 felony. (Ill. Rev. Stat. 1977, ch. 38, par. 16—1(e)(3).) Effective January 1, 1982, paragraph 16—1(e)(3) was amended to increase the monetary amount to $300 from $150. (Ill. Rev. Stat. 1983, ch. 38, par. 16—1(e)(3).) Although defendant's trial began March 8, 1982, the indictment was not amended to reflect this statutory change. Therefore, defendant claims he can only be convicted of a misdemeanor.

Initially we note that defendant raises the sufficiency of the indictment for the first time on appeal. The proper procedure to challenge a defective indictment is by means of a pretrial motion to dismiss the charge (Ill. Rev. Stat. 1983, ch. 38, par. 114—1), or a motion for arrest of judgment. (Ill. Rev. Stat. 1983, ch. 38, par. 116—2.) If the defendant does not attack the indictment through one of those procedures, the objection is waived and the sufficiency of the indictment is determined by whether "it apprised the accused of the precise offense charged with sufficient specificity to prepare his defense and allow pleading a resulting conviction as a bar to future prosecution arising out of the same conduct." (*People v. Gilmore* (1976), 63 Ill. 2d 23, 29, 344 N.E.2d 456, 460; *People v. Pujoue* (1975), 61 Ill. 2d 335, 339, 335 N.E.2d 437, 440.) We are convinced that the indictment accomplishes these purposes, and defendant has alleged no facts which indicate otherwise. Additionally, we note that extensive documentation was presented at trial to show that defendant had stolen in excess of $130,000 and that an instruction was given incorporating the amended statutory amount of $300 for convicting defendant of theft by deception. Therefore, we find that the indictment adequately apprised defendant that he was being charged with a felony.

## VII

■■ Defendant finally contends that the imposition of a consecutive sentence was improper. The trial court sentenced defendant to an indeterminate term of three years and four months to 10 years' imprisonment in accordance with defendant's election to be sentenced under the laws as they existed in 1976. (Ill. Rev. Stat. 1977, ch. 38, par. 1005—8—1; *People v. Lenninger* (1980), 88 Ill. App. 3d 801, 410 N.E.2d 1157.) The court ordered that this sentence was to be served consecutively with a five-year determinate sentence imposed on defendant in 1981 for another unrelated felony theft conviction. Defendant argues that the consecutive sentence was improper under the 1973 provisions of section 5—8—4 of the Uniform Code of Corrections. (Ill. Rev. Stat., 1973 Supp., ch. 38, par. 1005—8—4 (c).) Before being amended in 1974, that section provided:

> "The aggregate maximum of consecutive sentences shall not exceed twice the maximum term authorized under Section 5—8—1 for the most serious felony involved. The aggregate minimum period of consecutive sentences shall not exceed twice the lowest minimum term authorized under Section 5—8—1 for the most serious felony involved."

Defendant claims that under the 1973 version of section 5—8—4, a three-year consecutive sentence was the maximum that could have been imposed. In addition, defendant argues that the trial court's imposition of the consecutive sentence was not supported by the record.

Whether an indeterminate sentence can be made consecutive to a determinate sentence was addressed by our supreme court in *People v. Dye* (1977), 69 Ill. 2d 298, 371 N.E.2d 630. In *Dye*, defendant received an indeterminate sentence of two to eight years to be served consecutively to a determinate Federal sentence of five years. Treating the determinate sentence as having a five-year minimum, the appellate court found that the aggregate minimum period exceeded twice the minimum penalty for the offense of forgery, which was the most serious felony involved, and therefore violated provisions of section 5—8—4(c). (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—4(c).) The appellate court directed that the sentence imposed in Illinois should be served concurrently with the Federal sentence. In reversing the appellate court, the supreme court noted that the statutory provision for measuring a consecutive sentence was "clearly confine[d] *** to situations where the aggregate minimum terms of imprisonment [could] be calculated." (*People v. Dye* (1977) 69 Ill. 2d 298, 306-07, 371 N.E.2d 630, 634.) The court concluded that since Federal determinate sentences do not have maximum or minimum terms, the statutory

provision limiting the imposition of consecutive sentences was inapplicable. Therefore, according to the court, the calculation of minimum and maximum terms to determine consecutive sentences was limited to indeterminate sentences under section 5—8—1. (Ill. Rev. Stat. 1977, ch. 38, par. 1005—8—1.) Upon the authority of *Dye*, then, defendant's argument cannot prevail.

Further, as prescribed by section 5—8—4 (Ill. Rev. Stat. 1977, ch. 38, par. 1005—8—4), it is generally within the trial court's discretion to determine whether or not multiple terms of imprisonment are to be served concurrently or consecutively. In the recent case, *People v. Hicks* (1984), 101 Ill. 2d 366, 374, the supreme court noted that the statutory requirement that the court " 'shall set forth in the record' " the basis for the court's determination that a consecutive sentence is " 'required to protect the public from further criminal conduct ***' " is permissive rather than mandatory. The supreme court determined that the requirement would be satisfied if the record showed that the trial court believed the consecutive term was necessary for the protection of the public.

In imposing the consecutive sentence in the instant case, the court stated that "a severe sentence is necessary *** to protect the public from further [similar] criminal conduct." The court noted that defendant was a mature adult who engaged in calculated cheating and whose actions were of considerable harm to the taxpaying general public. The court also stated that the severe sentence was needed to deter others who may be tempted to engage in similar conduct believing that such offenses would go undetected. From our review of the court, it is clear that the sentencing judge was convinced in light of all the facts and circumstances before him that a consecutive term was necessary for the protection of the public. The statute requires nothing more. See *People v. Hicks* (1984), 101 Ill. 2d 366.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Judgment affirmed.

BUCKLEY, P.J., and GOLDBERG, J., concur.