(No. 49413.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. RICHARD LEE DYE, Appellant.

*Opinion filed Nov. 30, 1977.—Rehearing denied Jan. 26, 1978.*

James Geis, Deputy Defender, and Richard J. Geddes, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellant.

William J. Scott, Attorney General, of Springfield, and Ronald C. Dozier, State's Attorney, of Bloomington (Donald B. Mackay and Melbourne Noel, Assistant Attorneys General, of Chicago, and Robert C. Perry and James G. Condon, of the Illinois State's Attorneys Association Prosecutor's Appellate Service, of Springfield, of counsel), for the People.

MR. JUSTICE RYAN delivered the opinion of the court:

The defendant, Richard Dye, was indicted for the offense of forgery and tried by jury in the circuit court of McLean County. He was found guilty as charged, and the court imposed a sentence of 2 to 8 years' imprisonment, to run consecutively to a previously imposed Federal sentence of 5 years, being served by the defendant in the Federal penitentiary in Terre Haute, Indiana. The defendant appealed, contending that dismissal of the Illinois charges was mandated by the Uniform Agreement on Detainers Act (Ill. Rev. Stat. 1973, ch. 38, par. 1003—8—9 (hereinafter Uniform Agreement)), and also that it was improper for the trial court to impose consecutive sentences. The appellate court rejected the defendant's argument that the Uniform Agreement mandated his dismissal, but did direct that the mittimus be amended to reflect the imposition of concurrent, rather than consecutive sentences. (45 Ill. App. 3d 465.) We granted the defendant's petition for leave to appeal, which raised the issues pertaining to the Uniform Agreement which at that

time were unresolved in this State. During oral argument the propriety of the appellate court's decision to impose concurrent rather than consecutive sentences was raised by the State, and both parties have filed supplemental briefs with this court.

Two indictments were returned against the defendant in McLean County charging him with forgery. Because he was incarcerated in the Federal penitentiary in Atlanta, he failed to appear for arraignment on February 15, 1974, at which time a bench warrant was issued for his arrest. On September 18, 1974, the defendant wrote to the State's Attorney of McLean County, requesting a speedy disposition of the charges pending against him in that county. Pursuant to a writ of *habeas corpus ad prosequendum,* issued on February 14, 1975, to the warden of the Federal penitentiary in Terre Haute, Indiana (where the defendant had been transferred), the defendant was brought into Illinois and appeared at his arraignment on March 3, 1975. The defendant entered a plea of not guilty to the charges.

After disposing of the defendant's claim that he had not been tried within 180 days after his request for final disposition, as prescribed by article III(a) of the Uniform Agreement, the trial court set the defendant's date for trial on March 16, 1975. On that date, the State's Attorney moved to nol-pros one of the two counts of forgery, but indicated that the State was prepared to go to trial on the other. The defendant, however, was unprepared to proceed to trial on the second indictment, and requested a continuance, which was granted by the court for a period of 30 days. The defendant, who had been awaiting trial in the Springfield city jail because the McLean County jail did not meet Federal standards, was then transported back to the Federal penitentiary by the United States marshals.

On April 9, 1975, the defendant moved to dismiss the charges pending against him. At the hearing on that motion, the defendant directed the court's attention to

article III, section (d), of the Uniform Agreement, which in pertinent part provides:

> "If trial is not had on any indictment, information or complaint contemplated hereby prior to the return of the prisoner to the original place of imprisonment, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice." (Ill. Rev. Stat. 1973, ch. 38, par. 1003—8—9, art. III(d).)

The defendant argued that, according to the clear wording of the statute, he was entitled to dismissal because he had been sent back to his original place of imprisonment before trial on the Illinois indictment. The trial court, however, denied the defendant's motion, proceeded to hear the case, and upon a finding of guilty as charged, imposed a 2- to 8-year term of imprisonment, to be served consecutively with the term the defendant was then serving in the Federal penitentiary. As indicated earlier, the appellate court affirmed the trial court's finding regarding the refusal to dismiss the indictments, but imposed concurrent rather than consecutive sentences. This appeal followed.

The issue raised—whether article III(d) of the Uniform Agreement mandates a dismissal of the charges against the defendant—has in large part been resolved by this court in the recent opinion of *Neville v. Friedman* (1977), 67 Ill. 2d 488. In that case this court decided that the defendant was not entitled to dismissal under article IV(e) of the Uniform Agreement (which is similar to article III(d)) because he was returned to the sending jurisdiction as "a result of a lengthy, indefinite trial continuance granted at his request." 67 Ill. 2d 488, 491.

In *Neville,* the petitioner had been sent to Sangamon County, Illinois, from the Federal penitentiary in Terre Haute for trial on several Illinois indictments. He was granted a continuance because of his counsel's illness, and

was returned to the Federal penitentiary. Later, the petitioner moved to dismiss the indictments pursuant to article IV(e), which, like article III(d), provides for the dismissal of indictments in the receiving jurisdiction if a prisoner is returned to his original place of imprisonment before a trial on those indictments. We held in *Neville* that a literal reading of the statutory language would contravene the general intent of the Uniform Agreement, which is "to encourage the expeditious and orderly disposition of untried charges against a prisoner in order to accomplish its basic purpose of reducing obstructions to programs of prisoner treatment and rehabilitation." (*Neville v. Friedman,* 67 Ill. 2d 488, 492.) We noted that the prisoner's continued detention in the county jail "would substantially interfere with the Federal prisoner-treatment and rehabilitation programs *** employed at Terre Haute." (67 Ill. 2d 488, 493-94.) We further noted that "[s]uch interference is not in the best interests of [the prisoner], for whose benefit the programs are designed ***." (67 Ill. 2d 488, 494.) Consequently, given this emphasis on prisoner treatment and rehabilitation set forth in the Uniform Agreement, in conjunction with the significant fact that the prisoner's continued detention in the county jail would have been necessitated by a continuance, granted at his own request, we did not feel that dismissal of the Illinois indictments was warranted.

We believe that the reasoning of *Neville* is applicable to the situation before us today. And, while we are aware of certain dissimilarity between the facts in *Neville* and those in the case at bar, we do not feel that the differences are controlling. Both prisoners were returned to the places of their original imprisonment, the Federal penitentiary in Terre Haute, during the length of continuances granted at their own request. As in *Neville,* we regard this to be a highly significant fact. And, while the delay occasioned in *Neville* was substantially longer than the 30-day period at

issue before us today, the delay here is long enough to interfere with the Federal treatment and rehabilitation programs that the defendant was undergoing in Terre Haute.

We are aware that article IV(e) involved in *Neville*, unlike article III(d) involved in this case, incorporates by reference article V(e) of the Uniform Agreement, which provides that "[a]t the earliest practicable time consonant with the purposes of this agreement, the prisoner shall be returned to the sending state" (Ill. Rev. Stat. 1973, ch. 38, par. 1003–8–9, art. V(e)). In *Neville*, we referred to this provision to embellish our general conclusion concerning the basic rehabilitative purpose of the Uniform Agreement. While article III(e) does not incorporate the remedial language of V(e), the fact that the Uniform Agreement, as a whole, is designed to reduce obstructions in programs of prisoner treatment and rehabilitation still remains. Consequently, it cannot be said that the failure of article III(e) to incorporate the provisions of article V(e) has any significance, at least within the context of the situation before us today.

There is another point which we must consider in regard to whether or not the defendant is entitled to dismissal under the provisions of the Uniform Agreement. Article V(a), which in general sets forth the procedures whereby receiving jurisdictions may acquire temporary custody of prisoners who are delivered for trial by sending jurisdictions, provides that "[i]n the case of a federal prisoner, the appropriate authority in the receiving state shall be entitled to temporary custody as provided by this agreement *or* to the prisoner's presence in federal custody at the place for trial ***." (Emphasis added.) (Ill. Rev. Stat. 1973, ch. 38, par. 1003–8–9, art. V(a).) In the present case the defendant was apparently never in the temporary custody of the Illinois authorities, but remained

in Federal custody, as evidenced by the fact that Federal marshals accompanied him on each and every visit to the court, and housed him in the city jail in Springfield and not in the McLean County jail at Bloomington. Consequently, unlike the situation where the receiving State has the temporary custody of a prisoner sent from a sister State, given the fact that the Federal authorities never surrendered custody of their prisoner, Illinois was only entitled to his presence at the time of trial. Under these circumstances the State had no effective voice in the matter of where the prisoner was to be housed during the duration of the continuance. Since temporary custody was never accomplished, this discretion would lie with the Federal authorities. It would be unfair to charge the State with the decision of the Federal authorities to transport the defendant back to Terre Haute to await trial. This is a different situation from that which would be presented if the prisoner had come from a sister State and temporary custody had been surrendered to Illinois, which in turn surrendered custody back to the sending State for the return of the prisoner to the place of original confinement.

Regarding the appellate court's decision pertaining to the Illinois sentence, we feel it was improper for the court to remand with directions to amend the mittimus to reflect the imposition of a concurrent rather than a consecutive sentence. For reasons discussed below, it was within the discretion of the trial court to impose a consecutive term of imprisonment for punishment of the Illinois offense.

As prescribed by the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—4(a)), it is generally within the discretion of the trial court to determine whether multiple terms of imprisonment are to be served concurrently or consecutively. This discretion, however, is qualified by various limitations set forth in detail in the

Code. For purposes of the present appeal, we are concerned with one such limitation, in effect at the time the crime in question was committed, and under which the defendant was entitled to be sentenced. (See *People v. Hollins* (1972), 51 Ill. 2d 68.) That section, later repealed, read in pertinent part as follows:

> "The aggregate minimum period of consecutive sentences shall not exceed twice the lowest minimum term authorized under Section 5—8—1 for the most serious felony involved. When sentenced only for misdemeanors, a defendant shall not be consecutively sentenced to more than the maximum for one Class A misdemeanor." Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1005—8—4(c).

At the time that the trial court imposed its consecutive sentence of 2 to 8 years, the defendant was serving a Federal determinate sentence of 5 years for the transportation of stolen vehicles. The appellate court reasoned that since forgery was the most serious felony involved (the maximum penalty for forgery is 10 years while the maximum penalty for transportation of stolen vehicles is 5 years) the aggregate minimum could not exceed 2 years, that being twice the minimum penalty authorized for the offense of forgery, a Class 3 felony (Ill. Rev. Stat. 1973, ch. 38, par. 17—3), under Illinois law. See Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1.

Because by their very nature, Federal determinate sentences have no maximum or minimum, the appellate court considered the 5-year sentence actually imposed against the defendant as the minimum period for that sentence. Since the aggregate minimum (7 years) exceeded twice the lowest minimum term for forgery (2 years) the appellate court felt compelled to impose a concurrent rather than a consecutive sentence for the Illinois offense.

In our opinion, the appellate court erred in determining that the sentencing provision in issue applied to Federal determinative sentences. The section clearly con-

fines its application to situations where the aggregate minimum terms of imprisonment can be calculated. Federal determinate sentences do not have minimum or maximum terms. Moreover, we note that former section 5—8—4(c) proscribed the imposition of consecutive sentences where the aggregate minimum exceeded "twice the lowest minimum term *authorized under Section 5—8—1* for the most serious felony involved." (Emphasis added.) (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1005—8—4(c).) If the Federal offense in this case would have been the most serious felony involved, application of the section would have been impossible since no minimum term for that offense is authorized and certainly not authorized by section 5—8—1. Consequently, because Federal determinate sentences have no minimum term and are not authorized under section 5—8—1, they cannot be considered within the ambit of former section 5—8—4(c) of the Uniform Code of Corrections.

Also, if this provision were held to apply to Federal determinative sentences, and the Illinois offense were the most serious, judges would be precluded from imposing consecutive sentences (in cases where the former section applied) in situations where the determinative sentence was greater than 2 years and the Illinois offense is less than a Class 1 felony. (See Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1.) Section 5—8—4(a) specifically authorizes the imposition of a consecutive sentence on a defendant who is already subject to a sentence imposed by a Federal court. It is highly unlikely that the legislature intended this type of restriction and very limited exercise of this authority, particularly when the Illinois crime arose out of conduct totally divorced from the crime which led to the prior term of imprisonment. In our opinion, the term of 2 to 8 years, to be served consecutively to the Federal term, was properly imposed by the court.

For the reasons discussed, the judgment of the appellate court is affirmed in part and reversed in part and the judgment of the circuit court is affirmed.

*Appellate court affirmed in part and reversed in part; circuit court affirmed.*