**STATE of Utah, Plaintiff and Appellee,**

v.

**Addam W. SWAPP, Defendant and Appellant.**

**No. 890087–CA.**

Court of Appeals of Utah.

March 1, 1991.

**116**

John R. Bucher (argued), Salt Lake City, for defendant and appellant.

R. Paul Van Dam, State Atty. Gen., Creighton C. Horton II (argued), Asst. Atty. Gen., Salt Lake City, for plaintiff and appellee.

Before BILLINGS, GARFF and ORME, JJ.

## OPINION

BILLINGS, Judge:

Defendant Addam Swapp appeals from a jury verdict finding him guilty of manslaughter, a second degree felony, in violation of Utah Code Ann. § 76–5–205 (1988). Defendant claims the trial court erred in denying his motion for a bill of particulars and by sentencing him to a term consecutive to the sentence imposed upon him in federal court. We affirm.

On January 16, 1988, a bomb exploded in Marion, Utah, severely damaging a chapel owned by the Church of Jesus Christ of Latter-day Saints (the "Mormons"). Local police responding to the scene found a trail of footprints in the snow, leading to defendant's farm.[1]

Local police immediately contacted federal authorities, as defendant had fired warning shots at them when they had previously attempted to enter the property. An F.B.I.

agent contacted defendant by telephone. The agent informed defendant that the property was surrounded and that law enforcement wanted a peaceful solution. Defendant told the agent he had expected the confrontation and that his family was prepared for a siege and could hold out for months.

A thirteen-day standoff followed. Throughout the standoff, defendant and his brother openly carried firearms on their property and fired at lights, generators and loudspeakers, which had been set up to assist in the effort to bring the standoff to an end. Finally, members of the F.B.I. Hostage Rescue Team and Utah State Corrections Department dog handlers were called in to help end the standoff.

Law enforcement officers believed defendant was the leader, and that if he were captured, other family members would surrender. Several F.B.I. agents and corrections officers were able to enter, unobserved, one of the houses on the property, where they waited for a chance to capture defendant and his brother. On the morning of January 28, 1988, defendant and his brother left the main house, heavily armed as usual. Correction officers released the dogs, and shortly thereafter gunfire erupted from the main house. During the exchange, corrections officer Fred House was killed and defendant was wounded. Shortly after defendant was wounded, he and his family surrendered.

After being taken into custody, John Timothy Singer, a member of defendant's family, gave a statement to officers wherein he admitted that he was seated in his wheelchair in his bedroom looking out his window in the main home when the dogs were released. While Singer denied firing at people, he admitted he fired at the dogs, which would have been in the general direction of Officer House.

Based upon these events, defendant was charged with criminal homicide, in violation of Utah Code Ann. §§ 76–5–203 (1990),[2]

1. During trial, defendant admitted he had bombed the church.

2. Utah Code Ann. § 76–5–203 provides:

(1) Criminal homicide constitutes murder in the second degree if the actor:

and 76–2–202 (1990) which details accomplice liability.[3] An affidavit of probable cause describing the facts surrounding the bombing, subsequent standoff, and shooting was filed with the information.

Before trial, defendant filed a motion for a bill of particulars. The state responded with a memorandum in response to defendant's motion for a bill of particulars, and included a memorandum of authority delineating the state's legal theories and repeating the exhaustive recitation of facts from the affidavit of probable cause supporting those theories. The trial court denied defendant's motion for a bill of particulars.

A jury convicted defendant of the lesser included offense of manslaughter, a violation of Utah Code Ann. § 76–5–205 (1990). Defendant was sentenced on January 26, 1989, to a term of not less than one year nor more than fifteen years in the Utah State Prison, his term to run consecutively to and at the end of any and all determinate sentences imposed upon defendant in federal court, with the limitation that his combined state and federal sentences could not exceed thirty years.[4]

## BILL OF PARTICULARS

■ Initially, defendant claims the trial court erred in denying his motion for a bill of particulars. We will not reverse the trial court's decision to deny a bill of particulars unless the trial court has abused its discretion. *State v. Riddle*, 112 Utah 356, 188 P.2d 449 (1948). When dealing with a claim that a defendant was not given adequate notice of the charges against him, we focus on whether the error "impeded the accused's ability to prepare for trial and meet the state's case." *State v. Bell*, 770 P.2d 100, 106 (Utah 1988).

■ Defendant claims the information was insufficient to put him on notice of the charges against him. Specifically, defendant maintains that because he was charged in the alternative with three possible theories of murder, Utah Code Ann. § 76–5–203(1)(a), (b), and (c), and also with committing the crime "on or about January 28, 1988" including all possible facts involved in the thirteen-day siege, and all possible combinations with the other two defendants, he had to guess "which facts would be used to support which theories and which combination of factors" would be used.

The state argues defendant was put on notice of the charges against him, as well as the factual basis for those charges, by the information, affidavit in support of probable cause and other pretrial memoranda. The state contends defendant knew the state's theory was that defendant put the events into action which ultimately resulted in the death of Officer House.

Article I, section 12 of the Utah Constitution guarantees that the accused in a criminal prosecution "shall have the right ... to demand the nature and cause of the accusation against him [and] to have a copy thereof." In *State v. Fulton*, 742 P.2d 1208 (Utah 1987), *cert. denied*, 484 U.S. 1044, 108 S.Ct. 777, 98 L.Ed.2d 864 (1988), the Utah Supreme Court, in interpreting this provision stated "that the accused [must] be given sufficient information 'so that he can know the particulars of the

(a) intentinally or knowingly causes the death of another, ...
(b) intending to cause serious bodily injury to another, he commits an act clearly dangerous to human life that causes the death of another;
(c) acting under circumstances evidencing a depraved indifference to human life, he engages in conduct which creates a grave risk of death to another and thereby causes the death of another....

3. Section 76–2–202 states: "Every person, acting with the mental state required for the commission of an offense who directly commits the

offense, who solicits, requests, commands, encourages, or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable as a party for such conduct."

4. The federal district court imposed a fifteen year determinate sentence upon defendant. The government appealed to the United States Court of Appeals for the Tenth Circuit alleging the federal trial court erred when deferring defendant's sentence on count II involving the use of a deadly and dangerous weapon. Defendant was resentenced on January 23, 1991, to an additional five-year term.

alleged wrongful conduct and can adequately prepare his defense.' " *Id.* at 1214 (citing *State v. Burnett*, 712 P.2d 260, 262 (Utah 1985)).

Normally this constitutional right to notice is implemented through Rule 4(b) of the Utah Rules of Criminal Procedure.[5] *See, e.g., State v. Bell*, 770 P.2d at 106. However, if the information or indictment fail to provide the accused with sufficient information to enable him to prepare a defense, he may request a bill of particulars. *See id.* at 104; *Fulton*, 742 P.2d at 1214. Rule 4(e) states:

> When facts not set out in an information or indictment are required to inform a defendant of the nature and cause of the offense charged, so as to enable him to prepare his defense, the defendant may file a written motion for a bill of particulars.... The request for and contents of a bill of particulars shall be limited to a statement of factual information needed to set forth the essential elements of the particular offense charged.

Utah R.Crim.P. 4(e).

Recently, the Utah Supreme Court stated that an "information or indictment is legally sufficient even if it consists of nothing more than an extremely summary statement of the charge," provided the accused has sufficient information to prepare a defense. *Bell*, 770 P.2d at 104. Furthermore, the information can be supplemented with "a fact statement" detailing the facts which support the charge. *Id.* at 104. A fact statement, however, is not necessary in every case.

We note that a bill of particulars is not a device to enable the defendant to obtain a preview of the prosecution's evidence, *State v. Robbins*, 709 P.2d 771, 773 (Utah 1985) (citing *State v. Lack*, 118 Utah 128, 221 P.2d 852, 855 (1950)); *State v. Moraine*, 475 P.2d 831, 833 (Utah 1970). The accused is, however, entitled to whatever information the prosecutor has that may be useful in helping to fix the date, time and place of the offense. *Robbins*, 709 P.2d at 773.

■ Defendant relies principally on *Bell* to support his claim that the trial court abused its discretion when it failed to grant his motion for a bill of particulars. In *Bell*, the Utah Supreme Court reversed a conviction for racketeering, by means of drug trafficking, finding neither the indictment nor the bill of particulars gave the defendant sufficient notice of the charges against him to enable him to prepare a defense. The court concluded that the indictment, which merely repeated verbatim the broad, vague language of the racketeering statute without describing any factual circumstances constituting the crime charged, and stated that the crime had been committed during a ten-month period, failed to provide the defendant with sufficient notice of the facts underlying the charges. *Id.* at 105. Similarly, the bill of particulars the prosecution was ordered to provide failed to cure the problem as it did not articulate the factual basis of what "enterprise" was allegedly involved, an element of the offense. *Id.*

With this Utah authority before us, we review the information and supporting factual affidavit to determine if defendant was provided with adequate information to prepare his defense. The information filed in this case specifically stated that the defendant, his brother and Singer

> on or about January 28, 1988 ... intentionally or knowingly caused the death of Fred House; and/or intending to cause serious bodily injury to another, said defendants committed an act clearly dangerous to human life that caused the death of Fred House; and/or acting under circumstances evidencing a depraved indifference to human life, said defendants knowingly engaged in conduct which created a grave risk of death to

---

**5.** Rule 4(b) provides in part:

> An indictment or information shall charge the offense ... by using the name given to the offense by common law or by statute or by stating in concise terms the definition of the offense sufficient to give the defendant notice of the charge. An information may contain or be accompanied by a statement of facts sufficient to make out probable cause to sustain the offense charged where appropriate....

Utah R.Crim.P. 4(b).

another and thereby caused the death of Fred House.

The information also charged defendant with violating Utah Code Ann. § 76–2–202 (1990), which details accomplice liability.

In addition to the information, the state provided the defendant with a twelve-page affidavit of probable cause at the time the information was filed. This affidavit contained an extensive factual statement which carefully outlined all the events leading up to and during the thirteen-day siege which the state relied upon in its prosecution of defendant. The affidavit outlined the bombing of the church, defendant's armed resistance, and defendant's refusal to end the standoff peacefully. The affidavit, for example, stated in relevant part:

On January 16, 1988, Defendant Addam Swapp and others planted and detonated an explosive device in an LDS Church chapel in Marion, Utah. Federal authorities subsequently indicted Defendant Addam Swapp for the bombing ... after the bombing, Defendant Addam Swapp, his brother ... and Vickie Singer barricaded themselves on the Singer family property and refused to surrender to law enforcement authorities.... The Singer/Swapp families remained barricaded on the property for thirteen days before surrendering.

On frequent occasions, surveillance personnel observed Defendant Addam Swapp armed with pistols, a knife, and a rifle, and [his brother] armed with a pistol and rifle. Both [ ] moved about the property while armed. Repeated requests for surrender were ignored.

On January 20, 1988, Special Agent in Charge Nolan Douglas of the Bureau of Alcohol, Tobacco and Firearms wrote a letter advising Defendant Addam Swapp and Vickie Singer that warrants for their arrest and search warrants for the property had been issued in connection with the bombing of the LDS church building in Marion. Douglas advised that they should surrender immediately and end the standoff.

On January 26, 1988, a letter from Governor Norman Bangerter was delivered to Defendant Addam Swapp and Vickie Singer, wherein the Governor entreated them to surrender. The following day both wrote reply letters to the Governor. Defendant Addam Swapp indicated in his letter that he would not surrender.... He further warned the Governor that any man who attempted to cross the Singer property boundary would be treated as an aggressor, and that they would defend themselves in any manner they saw fit.

Besides this detailed factual statement contained in the affidavit, the state, in response to defendant's motion for a bill of particulars, went even further and outlined its legal theory of liability, linking the statutory crimes with the facts presented. In a memorandum entitled "Principles of Accomplice Liability and of Legal Causation," the state articulates: [6]

Defendants set in motion events the natural and probable outcome of which was death. They set the stage for a foreseeable and tragic outcome by creating a highly volatile situation. They knowingly engaged in conduct that created a grave risk of death to another, and the circumstances under which they acted, when viewed objectively by a reasonable person, evidenced depraved indifference to human life ... (i.e. Defendants collective armed resistance to law enforcement authorities after bombing the church; their refusal to allow officers onto the property despite a legal obligation to do so after notification of outstanding search and arrest warrants; their turning the Singer residence into an armed fortress; their moving about the property armed with high powered rifles and other deadly weapons; their aiming of weapons and firing of shots [by one or more participants] in the direction of the officers during the siege).

Firing by Timothy [Singer] cannot be considered an independent intervening

---

6. The state's memorandum, entitled "Principles of Accomplice Liability and of Legal Causation," accomplished the same purpose as a bill of particulars, and although captioned otherwise, was filed at the same time in these proceedings as a bill of particulars would have been.

cause or an unforeseeable event as it pertains to the legal liability of Addam and Jonathan Swapp. Timothy's actions were part and parcel of the joint resistance. Defendants' own conduct of armed resistance exhibited a conscious disregard for life, and the victim's resulting death was highly probable. Hence, such conduct caused the death of the victim.

Based upon the foregoing, we conclude defendant had sufficient information to prepare his defense, and find no error in the trial court's denial of his motion for a bill of particulars.[7]

## SENTENCING

■ Next, defendant contends the trial court's imposition of a sentence consecutive to his federal sentences was improper under Utah Code Ann. § 76–3–401(4) and (5)(c), which at the time defendant was sentenced, stated, with our emphasis, as follows:[8]

(4) If a court lawfully determined to impose consecutive sentences, *the aggregate minimum of all sentences imposed may not exceed twelve years' imprisonment* and the aggregate maximum of all sentences imposed may not exceed thirty years' imprisonment ...

(5) The limitation in subsection (4) applies:

(c) If a defendant has already been sentenced by a court of this state other than the present sentencing court or by a court of another state or *federal jurisdiction.*

Defendant claims the trial court erred in sentencing him to a term consecutive to

that imposed upon him in his federal trial, as he had already been sentenced to a term of more than twelve years in connection with his federal convictions. The trial court rejected defendant's argument holding that the limitation of aggregate minimum sentences of twelve years found in 76–3–401 was inapplicable where the sentence of the first sentencing court was a determinate one.

Defendant argues the plain language of section 76–3–401 makes it applicable to both determinate and indeterminate sentences alike, and thus this statute precluded the state court from imposing a consecutive sentence. When examining a trial court's interpretation of a statutory provision we apply a correction of error standard. *See Ward v. Richfield City*, 798 P.2d 757, 759 (Utah 1990); *Western Fiberglass, Inc. v. Kirton, McConkie and Bushnell*, 789 P.2d 34, 37 (Utah Ct.App.1990). Furthermore, Utah law specifically provides that a penal statute shall be construed "according to the fair import of [its] terms to promote justice." Utah Code Ann. § 76–1–106 (1990).

First, we note that we agree with the trial court that section 76–3–401 does not preclude the *imposition* of consecutive sentences, but merely restricts the *effect* of consecutive sentences. This construction of section 76–3–401(4) is consistent with the general statutory directives contained in sections 76–3–401 to –409 entitled "Limitations and Special Provisions in Sentences." As the trial court noted, section 76–3–401(6) focuses on "the effect" of consecutive sen-

---

**7.** Although we hold that the trial court did not abuse its discretion in failing to order the state to provide defendant with a bill of particulars, and we therefore need not reach the issue of prejudice, we note that in order to prevail, defendant must show that failure to provide him with a bill of particulars prejudiced him by depriving him of an "opportunity to assert a defense he reasonably might have had against the charges." *State v. Robbins*, 709 P.2d 771, 773 (Utah 1985). Defendant has failed to make a credible argument as to how the failure to provide the bill of particulars impaired his defense. *State v. Bell*, 770 P.2d 100, 106 (Utah 1988). On appeal, defendant does not articulate

a particular legal theory he would have been able to employ had a bill of particulars been provided or a factual or legal defense he could have pursued. Nor does defendant state what facts were not disclosed to him, or how any lack of knowledge specifically impeded his defense. Defendant simply makes a general conclusory statement that it was difficult to defend against this complex multidefendant prosecution. Thus, even if we were to find error in the disallowance of the requested bill of particulars, it is unlikely we would find sufficient prejudice to warrant reversal.

**8.** Section 76–3–401 was amended in 1989. *See infra,* note 9.

tences.[9] We construe section 76–3–401 in the context of the entire sentencing framework to give effect to the entire statutory scheme. *Utah State Road Comm'n v. Friberg*, 687 P.2d 821, 831 (Utah 1984).

If we examine the effect of the imposition of the federal determinate sentence, we see that this determinate sentence contains no "minimum term" and thus section 76–3–401(4)'s restriction of an aggregate twelve-year minimum sentence is inapplicable. When dealing with determinate sentences, there is simply no relevance to the concept of a minimum term. The twenty-year federal sentence imposed upon defendant is only relevant when examining the maximum thirty-year limitation imposed by section 76–3–401. This construction of the statute is consistent with the purpose of a statute limiting consecutive sentences, which is to guard against oppressive and inequitably long sentences. *See* Model Penal Code § 7.06 comment 1 (1985).

We note that the Illinois Supreme Court, faced with a similar issue, came to a similar conclusion and held that a minimum restriction in an Illinois sentencing statute dealing with consecutive sentences was inapplicable when dealing with a federal determinate sentence. *People v. Dye*, 69 Ill.2d 298, 13 Ill.Dec. 695, 698–99, 371 N.E.2d 630, 633–34 (1977). The defendant in *Dye* had been sentenced in a federal court to a determinate term of five years. The defendant was then convicted of forgery in a state court, where the judge imposed an indeterminate sentence of one to ten years, to run consecutively to the previously imposed federal sentence. The Illinois stat-

ute pertaining to consecutive sentencing, like Utah's, referred to both state and federal sentences, and limited the aggregate minimum period of consecutive sentences to "twice the lowest minimum term authorized under Section 5–8–1 for the most serious felony involved." *Id.*, 13 Ill.Dec. at 698, 371 N.E.2d at 633.

The Illinois Court of Appeals disagreed with the trial court's imposition of consecutive sentences. The court reasoned that the federal determinate sentence previously imposed had to be considered to be both the minimum and maximum terms under the Illinois statute.

The Illinois Supreme Court reversed the court of appeals. The supreme court held that because federal determinate sentences have no minimum term, the statute limiting aggregate minimum sentences was not applicable to a previously imposed federal determinate sentence.

The court stated:

[T]he appellate court erred in determining that the sentencing provision in issue applied to Federal determinate sentences. The section clearly confines its application to situations where the aggregate minimum terms of imprisonment can be calculated. Federal determinate sentences do not have minimum or maximum terms....

*Id.*, 13 Ill.Dec. at 698–99, 371 N.E.2d at 633–34.

In conclusion, we affirm the trial court's sentence of a term of not less than one year nor more than fifteen years in the

---

**9.** In 1989, the Utah Legislature amended section 76–3–401, thereby clarifying that the statute was concerned with the *effect* of consecutive sentences. Among other changes, the legislature added a new subsection, 76–3–401(8), which states:

This section may not be construed to restrict the number or length of individual consecutive sentences that may be imposed or to affect the validity of any sentence so imposed, but only to limit the length of sentences actually served under the commitments.

We do not have the benefit of legislative history as the bill was considered in both the House and Senate on the Consent calendar without discussion. However, testimony offered before one of the committees considering the advisabil-

ity of the change is consistent with our conclusion that the "effect" language was added to simply clarify the meaning implicit in the prior statute.

The legislature also deleted the minimum aggregate limitation of twelve years found in section 76–3–401(4), but retained the maximum aggregate limitation of 30 years.

According to Utah law, subsequent amendments to a statute shall be persuasive evidence of the purpose and intent of the legislature in passing the former statute. *See, e.g., State v. Bishop*, 753 P.2d 439, 486 (Utah 1988) ("When a statute is amended, the amendment is persuasive evidence of the legislature's intent when it passed the former, unamended statute.").

Utah State Prison, a term to run consecutively to and at the end of any and all determinate sentences imposed in federal court, with the limitation that all sentences cannot exceed thirty years.

GARFF and ORME, JJ., concur.