STATE of Utah, Plaintiff and Appellee,

v.

William HORTON, Defendant and Appellant.

No. 920245–CA.

Court of Appeals of Utah.

March 3, 1993.

Alan M. Williams (argued), Vernal, for appellant.

Jan Graham, Atty. Gen., and Todd A. Utzinger, Asst. Atty. Gen. (argued), Salt Lake City, for appellee.

Before BENCH, GARFF and JACKSON, JJ.

## OPINION

JACKSON, Judge:

William Gene Horton appeals his convictions of four counts of theft, in violation of Utah Code Ann. § 76–6–404 (1990), and four counts of burglary, in violation of Utah Code Ann. § 76–6–202 (1990). We affirm.

## I. FACTS

On the night of June 16, 1991, several businesses were burglarized in and around Vernal, Utah. On July 10, 1991, a magistrate issued a search warrant authorizing officers to search for stolen property at the residence of William Gene Horton in Salt Lake City, Utah. The warrant was issued based on information in Officer Boren's supporting affidavit provided by a confidential informant.[1] Officer Boren omitted some detailed information from the affidavit concerning the connection of the stolen property with Horton's residence so that Horton would be unable to discern the informant's identity.

On July 10, 1991, Officer Boren, accompanied by other officers, executed the search at Horton's residence. The officers recovered several stolen items, along with tools believed to be burglary tools.

A hearing was held on November 7, 1991, on Horton's motion to quash the search warrant and to suppress all evidence seized pursuant to the warrant. The trial court ruled the warrant was invalid but refused to suppress the evidence seized, relying on the "good faith" exception to the exclusionary rule. Trial was set for December 19, 1991, but was continued when a defense alibi witness, Clara Meinhart, had surgery and was unavailable for trial. The trial was reset for January 2, 1992, and Clara Meinhart was still unavailable. The trial court refused a second continuance when Horton so requested, instead, ordering that a deposition be taken of Clara Meinhart's testimony for use at trial.

Following a guilty verdict by a jury, Horton was sentenced to serve one term of one to fifteen years and six terms of up to five years at the Utah State Prison along with a six month term at the Uintah County Jail,

with all terms to be served consecutively. Horton challenges his conviction and sentence on appeal.

## II. ISSUES

Horton makes the following claims on appeal: (1) the officer's reliance on the defective warrant was not in good faith; (2) the trial court improperly excluded the affidavit of Harmon Meinhart; (3) the trial court improperly excluded a photograph of the trunk of the vehicle allegedly used to transport the stolen property; (4) the trial court improperly denied Horton's motion to continue; and (5) the trial court improperly sentenced defendant to one concurrent and seven consecutive prison terms totaling more than thirty years.

## III. ANALYSIS

### A. Good Faith Reliance

Horton asserts the officer's reliance on the defective warrant was not in good faith, and therefore, his state and federal constitutional rights were violated. Although Horton asserts that his state constitutional rights have been violated, he failed to properly raise the issue below. "[T]he proper forum in which to commence thoughtful and probing analysis of state constitutional interpretation is before the trial court, not ... for the first time on appeal." *State v. Bobo*, 803 P.2d 1268, 1273 (Utah App.1990). *See State v. Buford*, 820 P.2d 1381, 1384 (Utah App.1991) ("[e]ven though the Utah Constitution is subject to independent analysis, argument for such interpretation generally should begin at the trial court").

▉ Horton himself concedes that the applicability of the good faith exception under the Utah Constitution was not briefed at the trial court level.[2] Even on

---

**1.** The supporting affidavit is not in the record. However, a photocopy of the affidavit is attached to the state's brief as "Addendum A." The state filed a motion to have the affidavit admitted. At oral argument, appellant's counsel represented that the photocopy of the affidavit was received by the trial court pursuant to stipulation of the parties. The trial court's ruling shows that it considered the affidavit. Accord-

ingly, we deem the copy to be the original and part of the record.

**2.** Horton asserts this issue was discussed in open court and "presumably was considered in the trial court's decision" even though no specific finding was made. However, the trial transcript shows that the only discussion concerning whether the good faith exception was applicable

appeal, Horton failed to develop any meaningful argument under the Utah Constitution; he never attempted to explain why a different standard should be adopted under the Utah Constitution than under the federal constitution. Rule 24(a)(9) of the Utah Rules of Appellate Procedure provides: "The argument shall contain the contentions and reasons of the appellant with respect to the issues presented, with citations to the authorities, statutes, and parts of the record relied on." Mere allusion to state constitutional claims, unsupported by meaningful analysis, does not permit appellate review. *Bobo*, 803 P.2d at 1269 (Utah App.1990); *see State v. Yates*, 834 P.2d 599, 602 (Utah App.1992); *State v. Collard*, 810 P.2d 884, 885 n. 2 (Utah App.), *cert. denied*, 817 P.2d 327 (Utah 1991) (appellate courts "will not engage in a state constitutional analysis unless a party briefs a different analysis under the state constitution than that which flows from the federal Constitution"); *Christensen v. Munns*, 812 P.2d 69, 72–73 (Utah App.1991); *Koulis v. Standard Oil Co.*, 746 P.2d 1182, 1184–85 (Utah App.1987). Therefore, our analysis must proceed solely under federal constitutional law.

■■■ Evidence obtained by officers acting in good faith, objectively and reasonably relying on a search warrant issued by a neutral and detached magistrate, need not be excluded even if the warrant is subsequently invalidated by a lack of probable cause. *United States v. Leon*, 468 U.S. 897, 922, 104 S.Ct. 3405, 3420, 82 L.Ed.2d 677 (1984). There is a presumption that when an officer relies upon a warrant, the officer is acting in good faith. *United States v. Cardall*, 773 F.2d 1128, 1133 (10th Cir.1985). It is only when the officer's reliance on the warrant is "wholly unwarranted" that good faith is absent. *United States v. Corral–Corral*, 899 F.2d 927, 939 (10th Cir.1990) (quoting *Cardall*, 773 F.2d at 1133); *accord United States v. Williams*, 897 F.2d 1034, 1039 (10th Cir. 1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2064, 114 L.Ed.2d 469 (1991). A trial court's finding that an officer relied on a defective search warrant in good faith is subject to a de novo review by this court. *State v. Rowe*, 806 P.2d 730, 738 (Utah App.1991), *rev'd on other grounds*, —— P.2d ——, 196 Utah Adv.Rep. 14 (Utah 1992).

*Leon* describes four scenarios in which the exclusionary rule applies and good faith cannot be found: (1) the issuing magistrate is misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) the issuing magistrate wholly abandons his judicial role and fails to perform his neutral and detached function; (3) the warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; (4) the warrant is so facially deficient that it failed to particularize the place to be searched or the things to be seized, that the executing officer cannot presume it to be valid. *Leon*, 468 U.S. at 923, 104 S.Ct. at 3421.

■■■ Horton asserts the officer could not have acted in good faith in requesting or executing the warrant because he intentionally omitted information provided by the confidential informant that would tie the property sought to Horton's residence. However, we find that none of the scenarios described in *Leon* are present in this case to the degree that they would negate objective good faith. Horton has made no showing that the magistrate was misled by the omitted information. Further, the record below clearly establishes that Officer Boren was not attempting to mislead the magistrate by withholding the information. The mere omission of information that could have been included in an affidavit does not necessarily amount to an intent to mislead. This is also not a case where the magistrate wholly abandoned his role as a neutral and detached judicial officer or where the warrant was so facially deficient

under the Utah Constitution dealt with the fact that the issue had yet to be decided by either this court or the Utah Supreme Court.

that it failed to particularize the place to be searched or the items to be seized.

Further, we hold that the affidavit was not so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. The affidavit was not a "bare bones" affidavit, nor was it "devoid of facts." *See Leon*, 468 U.S. at 926, 104 S.Ct. at 3422 (where warrant was supported by much more than a "bare bones" affidavit, providing sufficient evidence to create disagreement as to existence of probable cause, an officer's reliance upon the warrant is objectively reasonable); *United States v. Cook*, 854 F.2d 371 (10th Cir.1988), *cert. denied*, 488 U.S. 1006, 109 S.Ct. 788, 102 L.Ed.2d 779 (1989) (affidavit was not so "devoid of facts" so as to negate good faith, even though it failed to establish probable cause). The affidavit supporting the search warrant recites numerous detailed facts, provided by a confidential informant, showing that Horton was involved in the burglaries. It also provides Horton's current address and describes in detail the items of evidence to be seized. All of these items described by the informant match the descriptions of items stolen in the burglaries.

Based on the above information, the magistrate concluded that sufficient probable cause existed to believe evidence link-

ing Horton to the burglaries would likely be present in his home, even though the affidavit did not specifically state that the confidential informant had seen the items at Horton's residence.[3] *See United States v. Reyes*, 798 F.2d 380, 382 (10th Cir.1986) ("[i]t is reasonable to assume that certain types of evidence would be kept at a defendant's residence and an affidavit need not contain personal observations that a defendant did keep such evidence at his residence") (citations omitted).[4]

In this case, when the magistrate made the determination that sufficient probable cause existed to believe the items would be present at Horton's residence, the officers conducting the search were entitled to rely upon that determination. *See Corral-Corral*, 899 F.2d at 939 (an officer should be entitled to rely upon a magistrate's finding of probable cause when defending an attack on their good faith for either seeking or executing a warrant); *Cardall*, 773 F.2d at 1133 ("[w]hen a warrant has issued, the legal sufficiency of the underlying affidavit has already been determined by the magistrate, and the magistrate's determination is entitled to credence.")

None of the four *Leon* scenarios apply in this case. The officers were not "wholly unwarranted" in relying upon the warrant. Accordingly, we agree with the trial court's

---

**3.** Officer Boren attempted to act in conformity with the Fourth Amendment by presenting this "close call" to the neutral and detached magistrate for review. Officer Boren could have provided more details in his affidavit connecting the stolen property to Horton's residence. Nonetheless, Officer Boren, as indicated in his testimony, recognized that as the amount of detailed information provided in the affidavit increased, so did the likelihood that Horton would be able to identify the confidential informant. Because the informant feared retaliation from Horton, he or she asked Officer Boren to keep his or her identity confidential. Officer Boren was forced to achieve a balance between providing enough information to establish probable cause and protecting the identity of his informant. Officer Boren risked having a magistrate refuse to issue the warrant in return for protecting the identity of the informant. In retrospect, while the missing information may have precluded a finding of probable cause by the trial court, it does not prevent our holding that the officers relied upon the warrant in good faith.

**4.** The affidavit stated the informant had seen Horton in possession of several boxes of videotapes, Nintendo games, VCR's and several boxes of packaged meat, and that the informant had seen Horton selling several cartons of cigarettes. The affidavit does not state, however, that the informant saw the property at Horton's residence. It could be inferred that, given the quantity of stolen property and the nature of those items, especially the packaged meat and other food items, these items would be found at Horton's residence. However, the trial court found the affidavit did not establish probable cause that the property was at Horton's residence because it was possible to infer from the affidavit that the stolen property was being distributed from Horton's vehicle, not from Horton's residence. Because we find that the officers relied in good faith upon the warrant, we need not determine whether the trial court properly determined the warrant lacked probable cause.

determination that Officer Boren's reliance on the search warrant was in good faith.

### B. Admissibility of Affidavit

Harmon Meinhart, Horton's father-in-law, prepared an affidavit in August, 1991, outlining his recollection of Horton's whereabouts on the night the burglaries occurred. Meinhart died in November, 1991, and was thus unavailable for trial. Horton offered Meinhart's affidavit at trial pursuant to the residual hearsay exception of the Utah Rules of Evidence, Rule 804(b)(5). The trial court refused to admit the evidence, ruling that because Meinhart's wife was available to testify to the same events, Meinhart's affidavit would not be more probative than other evidence Horton could obtain.

■■■■ An admissibility decision is the "sum of several rulings, each of which may be reviewed under a separate standard" of review. *State v. Thurman*, 846 P.2d 1256, 1270 n. 11 (Utah 1993). In determining whether the trial court properly excluded the Meinhart affidavit, we apply two standards of review. We apply a correction of error standard to the legal content of the trial court's ruling not to admit the affidavit. *See id.* at 1268–72. In reviewing the legal content, we examine (1) whether the trial court selected the correct rule of evidence, (2) whether the trial court correctly interpreted that rule, and (3) whether the trial court correctly applied the rule. We apply an abuse of discretion standard in reviewing the trial court's ruling, pursuant to Rule 804(b)(5) of the Utah Rules of Evidence, that the probative value of the Meinhart affidavit did not outweigh the probative value of other evidence on point. Abuse of discretion or reasonability is the appropriate standard of review for rulings requiring a balancing of factors. *Id.* at 1270 n. 11; *see also State v. Knowles*, 709 P.2d 311, 312 (Utah 1985); *State v. Morgan*, 813 P.2d 1207, 1210 n. 4 (Utah App. 1991).

Rule 804(b)(5) of the Utah Rules of Evidence provides:

A statement not specifically covered by any of the foregoing exceptions but hav-ing equivalent circumstantial guarantees of trustworthiness [will not be excluded] if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

■■■■ Horton asserts the affidavit should have been admitted because Mr. Meinhart's affidavit states that he saw Horton at Horton's residence on the night the burglaries occurred, while Mrs. Meinhart testified that she only heard him. However, the trial court determined, and the record clearly shows, that Mrs. Meinhart testified at least five times that she *saw* and heard Horton. In addition, Horton provided testimony from four other witnesses concerning his whereabouts on the night in question. Thus, the trial court did not abuse its discretion in determining that Mr. Meinhart's affidavit was not more probative than other evidence Horton could reasonably obtain.

Furthermore, the trial court correctly selected Rule 804(b)(5) because it is the appropriate standard governing the residual hearsay exception of the Utah Rules of Evidence. The trial court correctly interpreted that rule, as evidenced by the court's proper application of the rule. The trial court correctly applied the rule by weighing the factors required by Rule 804(b)(5)(B) and subsequently choosing to exclude the affidavit. Accordingly, the trial court's decision not to admit the Meinhart affidavit was correct.

### C. Admissibility of Photograph

Horton also claims the trial court improperly refused to allow into evidence a photograph of the trunk of the car allegedly used to transport the stolen property. Horton alleges the evidence was necessary because it was impossible to transport all the stolen property in the trunk because of its small size.

In determining whether the trial court properly excluded the photograph of the trunk, we again apply a correction of error standard to the trial court's legal determinations, i.e., whether the trial court was correct in its selection, interpretation, and application of the rule of evidence. *State v. Thurman*, 846 P.2d 1256, 1268–72 (Utah 1993). We also apply an abuse of discretion standard in determining whether the trial court reasonably determined the witness failed to properly authenticate the photograph pursuant to Rule 901 of the Utah Rules of Evidence. *United States v. Dombrowski*, 877 F.2d 520, 524 (7th Cir. 1989), *cert. denied*, 496 U.S. 907, 110 S.Ct. 2592, 110 L.Ed.2d 272 (1990); *United States v. Reyes*, 798 F.2d 380, 383 (10th Cir.1986).

Pursuant to Rule 901 of the Utah Rules of Evidence, evidence must be properly authenticated or identified before it is admitted into evidence at trial. In order to properly authenticate a photograph, the proponent must show that the photograph "is what its proponent claims." Utah R.Evid. 901(a). Thus, in order for the photograph to be admitted, Horton must have established that the photograph accurately depicts the trunk of the vehicle. *See State v. Purcell*, 711 P.2d 243, 245 (Utah 1985).

At trial, Horton's wife sought to authenticate the photograph pursuant to Utah R.Evid. 901(b)(1). She testified that she took a photograph of the trunk with a fourteen inch hubcap leaning on the inside edge of the trunk for perspective. She also testified that the floor of the trunk was flat. The state objected to the admission of the photograph because no proof existed that the hubcap was actually fourteen inches. Further, the bottom of the hubcap was not visible and could have been sitting on an object, thereby distorting the perspective of the trunk. The trial court was obviously more persuaded by the State's argument that the photograph was unreliable than it was by the testimony of Horton's wife.

We hold that the trial court did not abuse its discretion because the trial court acted well within the limits of reasonability in determining that the witness did not establish that the photograph accurately depicted the trunk of the vehicle.[5] We further hold that the trial court selected the correct rule of evidence because Rule 901 specifically applies to the exclusion of evidence when the evidence is not properly authenticated. The trial court interpreted the rule correctly as evidenced by the court's proper application of the rule, and the trial court applied Rule 901 correctly by weighing whether the witness properly authenticated the photograph as mandated by the rule. Therefore, the trial court's refusal to admit the photograph into evidence was correct.

### D. Motion to Continue

Horton next asserts the trial court should have granted his second motion to continue. Horton filed a motion to continue when a witness, Mrs. Meinhart, underwent surgery and was confined to her home. The trial court granted the first continuance but refused to grant a second continuance, instead ordering that the witness' deposition be taken and admitted at trial.

The decision to grant or deny a continuance lies within the sound discretion of the trial court and will not be disturbed on appeal absent a clear abuse of that discretion. *State v. Oliver*, 820 P.2d 474, 476 (Utah App.1991), *cert. denied*, 843 P.2d 516 (Utah 1992). When moving for a continuance, the moving party must show that denial of the motion will prevent the party from obtaining material and admissible evidence, that any additional witnesses it seeks can be produced within a reasonable time, and that it has exercised due diligence in preparing for the case before requesting the continuance. *Id.* Under this standard, the denial of the motion did not

---

**5.** Even if the trial court had improperly excluded the photograph, the error would have been harmless because the jury had other evidence from which it could determine whether the vehicle's trunk was large enough to accommodate the stolen property. *See Wright v. Redman Mobile Homes, Inc.*, 541 F.2d 1096, 1097–98 (5th Cir.1976).

prevent Horton from obtaining material and admissible evidence. Although the witness was unable to appear at the scheduled trial in person because of the need to recover from surgery, her testimony was presented at trial through the reading of her deposed statement. Consequently, Horton was not prevented from obtaining or presenting evidence. Rather, he was merely limited to presenting her testimony by having her deposition read to the jury instead of having her testify in person.

Further, the trial court reasonably found the six to eight week projected recovery time was an unreasonable time within which to produce the witness. Therefore, we conclude the trial court did not abuse its discretion in denying Horton's motion to continue.

### E. Sentence

 At the time of sentencing, Horton alleged that the imposition of one concurrent and seven consecutive prison terms, totaling over thirty years, was improper under Utah Code Ann. § 76–3–401(4) (1990). On appeal, Horton concedes the sentence was proper but seeks clarification that the maximum time served should be 30 years. When examining an interpretation of a statutory provision, we apply a correction of error standard. *State v. Swapp*, 808 P.2d 115, 120 (Utah App.), *cert. denied*, 815 P.2d 241 (Utah 1991). A penal statute shall be construed "according to the fair import of [its] terms to promote justice." Utah Code Ann. § 76–1–106 (1990).

Utah Code Ann. § 76–3–401(4) (1990), provides: "If a court imposes consecutive sentences, the aggregate maximum of all sentences imposed may not exceed 30 years' imprisonment...." Section 76–3–401(4) "does not preclude the *imposition* of consecutive sentences, but merely restricts the *effect* of consecutive sentences." *Swapp*, 808 P.2d at 120. Thus, section 76–3–401 does not preclude the imposition of consecutive sentences that total more than thirty years, but merely restricts the actual time served to be no more than thirty years. *Id.*

The trial court did not violate section 76–3–401 by imposing consecutive sentences totaling more than thirty years. Accordingly, we affirm the trial court's sentence, but recognize that the actual time served cannot exceed thirty years. *Swapp*, 808 P.2d at 121–22.

### IV. CONCLUSION

For the reasons stated above, we affirm Horton's conviction of four counts of theft and four counts of burglary and his sentence of one concurrent and seven consecutive prison terms.

GARFF, J., concurs.

BENCH, J., concurs in the result.